58    89
65h  222

GEORGE RESSEGUIE and OLIVER MASON, administrators, &c.,
*vs.* ANTHONY L. MASON.

Whether letters, written by one person to another, containing statements of
the amount of funds therewith, or previously, sent by the writer to the per-
son addressed, which letters were received by the latter, and retained with-
out objection or reply, are competent or sufficient evidence to show an
implied admission by the recipient of the letters, of the truth of the state-
ments therein ?   *Quære.*

In an action brought against the writer of such letters, by the administrators
of the person addressed, the defendant is an incompetent witness, under
§ 399 of the Code, to prove that the letters were written, or that they were
received and retained by the person addressed.

His testimony is incompetent, as relating both a "transaction" and " commu-
nication" between the party testifying and a deceased person, whose claims
against such party are the subject of the litigation.

The provisions of § 399 of the Code relate as well to written as to verbal com-
munications.

APPEAL by the plaintiffs from a judgment entered
upon the report of a referee dismissing the complaint,
with costs.

The plaintiffs alleged, in their complaint, that on or
about the 10th day of April, 1866, Anthony Mason, of
the town of Ridgeway, Orleans county, died intestate.
That the plaintiffs were duly appointed administrators of
the estate of said intestate, by the surrogate of Orleans
county, and letters of administration were duly issued to
them as such.   That the said Anthony Mason, during his
lifetime, and on or about the 25th day of November, 1852,
employed the defendant as his agent to loan certain
moneys belonging to him, said Anthony Mason, in the
State of Michigan, where the defendant then resided and
still resides ; such loans to be made upon good notes or
bonds and mortgages ; said defendant to return the money
placed in his hands for such purpose, or the security taken
for the same, when demanded ; and at that time, and sun-
dry other times during the years 1853, 1854, 1855 and
1856, said Anthony Mason placed in the hands of the

defendant, for the purposes aforesaid, large sums of money, amounting in all to about $8000; which said sums of money were taken and loaned by the defendant, in accordance with said agreement; and the interest money received had been also reinvested, and the defendant had received and collected, or now holds in his hands, notes, bonds and mortgages, and other securities, entitling him to receive and collect for interest moneys upon the different sums of money so placed in his hands, the sum of about $10,000. That the defendant returned to said Anthony Mason, of the sums so placed in his hands, and the interest moneys received thereon, the sum of $6305, leaving in his hands, of said moneys, about the sum of $11,695. That on or about the 6th day of July, 1867, the plaintiffs demanded of the defendant the balance of said moneys so remaining in his hands as aforesaid, and the notes, bonds and mortgages, or other securities received and held therefor, but that said defendant refused to pay or deliver over the same or any part thereof, and still refuses and neglects to pay the same or any part thereof. The plaintiffs therefore asked judgment against the defendant for the sum of $11,695, with interest from July 6, 1867, besides costs.

The defendant, by his answer, denied each and every allegation contained in the complaint, and alleged that he had fully paid and satisfied all the claims mentioned in the complaint. For a further answer, he alleged that the said Anthony Mason, in his lifetime, was, and his estate still is, indebted to the defendant for money had and received to his use, for moneys paid, laid out and expended by the defendant, to and for the use of said intestate, for moneys over paid by the defendant to said intestate by mistake, and for work, labor and services done and performed by the defendant, during the years mentioned in the complaint, for the said intestate and at his request, in the sum of $30,000. That all of said matters grew out

Resseguie *v.* Mason.

of, and were connected with, the matters set forth in the complaint; and the defendant demanded judgment against the plaintiffs for the sum of $15,000, and costs.

The plaintiffs put in a reply denying each and every allegation of the answer constituting a counter-claim.

On the trial, before the referee, the defendant was examined as a witness, and testified that he had examined among his father's papers, since his death, and found among them four letters, of different dates, from him (the witness) to his·father, each containing a statement of the amount of funds contained therein, or remitted therewith. One of them also contained a statement, in detail, of the amounts previously sent. Being asked in whose handwriting they were, the testimony was objected to, on the ground that the witness was incompetent, under sec. 399 of the Code. The objection was overruled, and the plaintiffs excepted. The witness testified: " They are in mine. I took them in the presence of Stephen Barrett, the acting administrator of father's estate, and with his consent." Letters offered in evidence. Objected to by the plaintiffs on the ground, 1st. They are they the declarations of the defendant in his own favor. 2d. Incompetent under section 399 of the Code, and generally. Objections overruled and letters received; to which decision the plaintiffs excepted.

The referee found, as facts, that Anthony Mason died on the 11th day of April, 1864, leaving a last will and testament, which was duly admitted to probate in the surrogate court of the county of Orleans, and the plaintiffs duly appointed executors thereof, who thereupon duly qualified and entered upon the discharge of their duties as such. That the said Anthony Mason in his lifetime, and during the year 1850, to the year 1856, both inclusive, delivered to the defendant divers sums of money, amounting in the aggregate to the sum of $7691, to invest for him in the State of Michigan. That the defendant

had since that time paid to the said Anthony Mason the full amount of the moneys so delivered as aforesaid, together with the lawful interest thereon. And upon the facts so found, the referee found, as a conclusion of law, that the defendant was not indebted to the plaintiffs in any sum of money, whatever, by reason of any of the matters set forth in the complaint; and that the defendant was entitled to judgment against the plaintiffs, dismissing their complaint, with costs to be paid out of the estate of said Anthony Mason, deceased, in their hands; and judgment was directed accordingly.

*H. E. Sickles,* for the appellants.

I. The referee erred in overruling the plaintiffs' objections, and allowing the defendant to testify to the sending of the letters containing the statements, and the reception and retention thereof by Anthony Mason. The objection was that the witness was incompetent to testify in regard thereto, under section 399 of the Code. This section, at the time the action was tried, (December 23d, 1868,) read as follows: Provided, however, that no party to an action, &c., "shall be examined in regard to any transaction or communication between such witness and a person at the time of such examination deceased," &c. This section applied as well to written as to verbal communications, (*Graham* v. *Chrystal,* 37 *How.* 279,) and the evidence came clearly within the exception.

II. The referee erred in overruling the plaintiffs' objections, and in receiving in evidence the letters above referred to. They were the declarations of the defendant proven by him and offered in his own favor, and as such are incompetent. (*Decker* v. *Myers,* 31 *How.* 372. *Crounse* v. *Fitch,* 23 *id.* 350. *Crosbie* v. *Leary,* 6 *Bosw.* 312. *Weeks* v. *Lowerre,* 8 *Barb.* 530. *Erben* v. *Lorillard,* 19 *N. Y.* 299. *Moore* v. *Meacham,* 10 *N. Y.* 207.)

III. These erroneous rulings were not mere technical

Resseguie *v.* Mason.

errors, and cannot be disregarded. Where evidence is improperly received, bearing upon material questions in the case, even if there were other competent and sufficient evidence, the error is not a technical one, merely, and cannot be disregarded, as the court cannot say the illegal evidence did not influence the decision. (*Williams* v. *Fitch*, 18 *N. Y.* 546, 552. *Erben* v. *Lorillard*, 19 *id.* 299. *Decker* v. *Myers*, 31 *How.* 372–375. *Worrall* v. *Parmalee*, 1 *N. Y.* 519.) It is only in a very clear case that an error in the court below, in admitting illegal testimony which may have influenced the decision, will be disregarded. (*Main* v. *Eagle*, 1 *E. D. Smith*, 619, 621. *Belden* v. *Nicolay*, 4 *id.* 14–16.) And where erroneous evidence is received under objection, the judgment must be reversed, unless it affirmatively appears that no injury could possibly have been caused. (*Wilson* v. *Wilson*, 4 *Keyes*, 413. *Battin* v. *Healey*, 36 *How.* 346.) Here the evidence was material, and tended to show payments which were disputed, and in regard to a portion of which there was no other testimony ; and yet the decision shows the referee regarded them all as proven.

IV. The referee erred in his conclusions of law. He finds as facts, "that the plaintiffs' intestate delivered to the defendant divers sums of money, amounting to $7691, to invest for him in the State of Michigan," and then, not that he had returned the same with the increase, but "that the defendant has since that time paid to said Anthony Mason the full amount of the moneys so delivered, together with the lawful interest thereon ;" and then, as conclusions of law, he finds that the defendant is not indebted to the plaintiffs in any sum, and is entitled to judgment dismissing the complaint. Giving to the report a fair construction, its substance is this : the defendant received this money, as agent, to invest for the plaintiffs' intestate in the State of Michigan ; that he was only bound to return the same with lawful interest, and having so done, he was not liable in this action. This interpretation

is strengthened by the fact that the referee evidently so figured it as reckoning simple interest, at seven per cent, and allowing the defendant the payments he claims, the account stands nearly balanced. We submit such a finding is error; that the defendant was bound to return the amount placed in his hands, with the sums actually received by him for its use, and that his liability is not limited to lawful interest thereon. And this was his express agreement, as evidenced by his letters and receipts. Even if the sums collected for the loans were unlawfully received, as agent he was bound to pay them over, and could not make a defense that his principal was not lawfully entitled to the money. (*Crosbie* v. *Leary*, 6 *Bosw.* 312.) But by the law of Michigan it was not unlawful to collect and receive more than ten per cent; the excess over the rate fixed by the statute, only, is forfeited in case the borrower chooses to contest the payment on that ground; and there is no evidence or pretext that such a defense was ever made.

V. If, for the purpose of sustaining the conclusion of the referee, this court is asked to presume a finding that the defendant has paid over both the principal and the sums received as interest upon the moneys loaned by him as agent for the plaintiffs' intestate, we submit, 1st. That although the court, in order to sustain the decision of a referee, will presume that he found such facts, in addition to those stated in the findings, appearing in the case, as will sustain his conclusion; yet it can only be done when, upon examining the evidence, it will warrant such additional findings. (*Valentine* v. *Conner*, 40 *N. Y.* 248.) 2d. There is no evidence whatsoever in the case, which will sustain such a finding; and the facts, as found and stated in the report, are repugnant thereto. Laying aside all of the plaintiffs' evidence that is disputed by the defendant, and giving him the full benefit of all produced by him, the case shows these facts undisputed: that the

Resseguie *v.* Mason.

defendant loaned the moneys placed in his hands, and the interest as collected, keeping them invested, save an average of $1000 on hand, at a minimum rate of interest of ten per cent, and running from that to twenty-five and thirty per cent.   He swears, in substance, that the moneys were kept invested, save an average of $1000.   In his letter dated November 25, 1852, acknowledging the receipt of the first large sum ($1500) placed in his hands, he promises to loan it "for the term of from one to five years, interest annually and semi-annually;" and he says, "I will let it for ten per cent, and what more I can get." His subsequent letters show that he loaned the money; and they contain no intimation that he was obtaining less than ten per cent.   All that is said upon the subject is in his letter of August 27, 1853, where he says "ten per cent is all I can get at present."   He states that money was being loaned as high as fifteen per cent.   He tells Matilda Mason that "he had let the money as high as twenty-five and thirty per cent."   The defendant did not deny or dispute this testimony; neither did he attempt to show that he received less than the rate he promised to loan for; nor that he did not receive as high rates as he admitted he had received.   We submit, then, that charging the defendant ten per cent compound interest on money received, allowing him the surplus of interest collected for his services; allowing also an average of $1000 on hand, and deducting the interest at ten per cent upon that sum; also allowing $500, the highest sum named by him, for disbursements, would be a most liberal computation, and certainly all that can with any propriety be claimed for the defendant.   It clearly appears that the defendant has not refunded this amount, but that there remains a large sum, at least $4000, in his hands.   The referee does not find that he has so refunded, but simply that he has paid back the moneys received, with lawful interest thereon. This finding, we claim, negatives the idea of his having

returned more than the amount of money received, with seven per cent simple interest thereon. And the evidence will not justify a finding that any more has been returned. The findings sought to be presumed, and the finding that the defendant is not indebted to the plaintiffs in any sum of money whatever, have therefore no evidence whatever to support them, and such findings could not be sustained in the Court of Appeals, (*Fellows* v. *Northrup*, 39 *N. Y.* 117; *Mason* v. *Lord*, 40 *id.* 476;) much less by the general term, whose right and duty it is to inquire whether the findings accord with the weight of evidence. (*McCabe* v. *Brayton*, 38 *N. Y.* 196. *Loeschick* v. *Baldwin*, *Id.* 326. *Valentine* v. *Conner*, 40 *id.* 248, 253.)

*John H. White*, for the respondent.

I. The exceptions of the plaintiffs, about which there can be any question, relate, almost exclusively, to the admission of evidence. The rule, under § 399 of the Code, should be, and probably is, the same as it was when the testimony was received under the act as amended in 1867. By that act a party could not be examined "in regard to any transaction or communication between such witness and a deceased person." The act, as amended in 1866, read: "In respect to any transaction or communication had personally by said party with a deceased person." Under this last act it has been decided, "that a party could testify that he deposited money in a bank and had it entered in the bank-book of deceased, and that the money was his own money;" and that it was not designed to exclude the testimony of a party as to an occurrence at which the other deceased party need not have been present, or a fact which he need not have known. (*Franklin* v. *Pinkney*, 18 *Abb.* 186.) The section now reads: "In regard to any personal transaction or communication between such witness," &c.; thus, if there was any difference in this respect, changing it back to where it was in

Resseguie *v.* Mason.

1866. But it is insisted that there is no difference in the construction of this section in this particular as it stood in each of the three years; that a transaction or communication *between* two persons under this section means a personal transaction or communication. If this were not so, in all cases where contracts were made with agents, and the principal should die, the other party to the contract could not be a witness, but only the agent. Of the defendant's account, but two items are contested, viz., that of December 27, 1859, $1000, and October 16, 1859, $1000. In regard to the disputed item of $1000, December 27, 1859, the testimony is uncontradicted. In addition to the undisputed testimony of other witnesses, the plaintiffs have seen fit to introduce the sworn statement of the defendant, and we claim the right to use that as evidence in our favor. Then we have the testimony of Moulthrop, that the intestate told him that he had drawn his money all away from Michigan; and of Swobe, that the intestate told him "Anthony had sent him all—all there was."

II. But, even if the rule were not as contended, the exceptions apply mainly, if not entirely, to admitted items, and could not, therefore, prejudice the plaintiffs. Every exception to the admission of testimony as contrary to section 399 of the Code, is in relation, either to undisputed items or to the two items which are undisputedly proven. There is, in fact, no conflict in the evidence as to any of the items of the defendant's account. These items are admitted merely in aid of the evidence of Moulthrop and Swobe as to the fact that the intestate had received all his money from Michigan, and not as the chief evidence.

III. The theory of the plaintiffs is, that the money was sent out to loan, and that they were entitled to the net proceeds of the money, over expenses and commissions. There is no satisfactory evidence as to how much interest was received, whether six or seven per cent; but figure

it at either rate and they are more than paid.   The intes-
tate told Hibbard he was not receiving more than seven
per cent.   There are two reasons why the evidence is not
entirely satisfactory; one is, that the defendant's books.
were burned with his store some years ago, and the other,
that the intestate was an illiterate man and was not accus-
tomed to write, even on his own business.   On the other
hand, the defendant did write both receipts and letters,
which were carefully hoarded, and were produced in evi-
dence, or such of them as the plaintiffs chose to introduce.
The defendant labors under great disadvantages; he is not
able to swear to the state of the accounts, by reason of
section 399, and has no written evidence of even the ad-
mitted items, or scarcely any.   For these reasons, the
court should hesitate long before it reverses the findings
of as truly able a referee as decided this case.

*By the Court,* JOHNSON, J.   The letters of the defendant
to the plaintiffs' intestate, which were received in evidence
in the defendant's favor, against the plaintiffs' objection,
could only be competent upon the ground that the intestate,
by receiving and retaining the letters without objection or
reply, had impliedly admitted the truth of the statements
therein contained in regard to the amount of funds in-
closed therein or therewith.   In each of the four letters
thus sent and received is a statement of the amount there-
with, or therein, forwarded to the intestate, and in one of
them is also a detailed statement of the several amounts
sent prior to that date.   It has long been well settled that
when one party sends an account current to another, resid-
ing in a different place, and the party to whom it is sent
keeps it by him for a length of time, without replying to
the statement, or disputing its accuracy, he is deemed to
acquiesce in its correctness, and to admit the truth of the
statement.   The cases on this subject will be found col-
lected in *Cowen & Hill's Notes, n.* 191, *pp.* 194, 195.   The

maxim *qui tacet consentire videtur* applies. The silence of the party receiving, gives consent, and the statement is received, not so much as the declaration of the party making and sending it, in his own favor, as the admission of the other party of the truth of the statement. These letters, I think, fall within this principle. But in every such case, an essential element is the fact that there has been no denial or contradiction of the statement, in any manner. The presumption of the admission of the truth of the matter stated, is founded upon the fact that the party receiving it has omitted to deny or controvert it. This element is wholly wanting here, and the presumption of acquiescence or admission wholly fails. It is unnecessary, however, to decide this question, of the competency, or sufficiency, of this evidence when properly before the court.

In the present case the letters were proved by the testimony of an incompetent witness. The only evidence of their having been written by the defendant, to the intestate, or of their having been found amongst the papers of the latter, thus showing that he had received and retained them, was the testimony of the defendant himself. The objection was taken that the defendant was incompetent to testify on the subject, under section 399 of the Code, and exception to the ruling admitting the evidence duly taken. The testimony was clearly incompetent. It' related to both a "transaction" and a "communication" between the party testifying, and a deceased person, whose claims against such party were the subject of the litigation. The provisions of section 399 of the Code relate as well to written as to verbal communications. It cannot be said that these letters, and written statements of the accounts between the defendant and the intestate, could have had no influence on the mind of the referee in deciding the issues tried before him. They touched the vital points at

issue, and must be presumed to have had their legitimate influence.

The judgment must therefore be reversed and a new trial granted, with costs to abide the event.

[FOURTH DEPARTMENT, GENERAL TERM, at Rochester, September 5, 1870. *Mullin,* P. J., and *Johnson* and *Talcott,* Justices.]