JOSEPH J. GARVEY, RESPONDENT, v. MARGARET OWENS AND OTHERS, APPELLANTS.

*Evidence — testimony as to the genuineness of the signature of a deceased person — when inadmissible under section 829 of the Code of Civil Procedure.*

A piece of ground, purchased in 1860 by one John Garvey, was, at his request, conveyed to his brother James. On December 14, 1869, James, in consideration of one dollar, conveyed the premises to John, who on the same day, by an instrument dated December fifteenth, conveyed the premises to James, who by the terms of the instrument was to collect the rents and defray therefrom all necessary expenses, and upon the payment of a sum therein named was to convey the premises, together with the net rents thereof, to Joseph J. Garvey, a son of John. This action was brought by Joseph against the infant heir-at-law and widow of James to have it declared that he was entitled to a conveyance of the premises and to recover the net rents thereof. Upon the trial the validity of the signature of James to the papers, dated December 14 and 15, 1869, was disputed by the defendants. Upon the trial John, the plaintiff's father, was called and asked to look at the signatures to the two papers and to state in whose handwriting they were.

*Held,* that the court erred in admitting the evidence as the witness was not competent to prove the signature of the deceased, to the deed, through which the plaintiff derived his title.

Appeal from an interlocutory judgment in favor of the plaintiff, rendered at the Special Term.

The action was brought to have the plaintiff declared entitled to receive a conveyance of a certain piece of land, and to compel the defendants to acount for the rents thereof.

*Geo. H. Foster*, for the appellants.

*E. R. Robinson*, for the guardian *ad litem*.

*Geo. C. Genet*, for the respondent.

Brady, J.:

It appears from the record that in 1860 John Garvey, who was the father of the plaintiff, purchased a piece of ground in the city of New York, which, at his request, was conveyed to James Garvey, his brother. In 1862 James Garvey conveyed the property mentioned to Michael Morrison without any consideration. Subsequently, and on or about the 1st of May, 1866, a lease was executed of the premises by John and James Garvey both, and by which they were demised for one year from May 1, 1866, by John to James. And this, notwithstanding that, as we have seen, they had already been conveyed to Morrison. On the 1st of February, 1867, however, by deed duly recorded, Michael Morrison, to whom the premises had been conveyed by James Garvey, by deed duly executed and recorded, as stated heretofore, reconveyed them to James. The latter paid nothing at the time of this transfer. On or about the 14th of December, 1869, an instrument was executed between James Garvey and his brother John for the consideration of one dollar, whereby the former granted, bargained and released to the latter a certain lot of land, being the premises in question. And on the same day, although dated December fifteenth, another instrument was executed by the parties, John Garvey being the party of the first part, and James of the second part, by which, for the consideration of one dollar, the same premises were conveyed to James, but which contained the following clause :

"And it is hereby further agreed, by and between the said parties, that the party of the second part shall and will collect all rents from said described premises, and to defray all necessary repairs, taxes and insurance that may accrue out of the said rents. Now this

agreement witnesseth, expressly, that said party of the second part shall and will grant, release and convey forever to Joseph James Garvey, of Tompkinsville, Richmond county, and State of New York, a son of the aforesaid John Garvey, for the sum of one dollar, all the above described lot of land with the building erected thereon, and also all sums of money that may have been collected for rents or otherwise from the same, after deducting the sum of three thousand five hundred dollars, without interest thereon, and also the expenses defrayed for all repairs, taxes and insurance from the day and year first above written, until the time when the said Joseph James Garvey shall become at the age of twenty-one years, which will be on the twenty-eighth day of October, in the year eighteen hundred and eighty-one."

In 1877 James Garvey, having in the meantime married, died leaving the defendant Joseph Garvey, an infant, his only child and heir-at-law him surviving, and leaving, also, his wife, a widow, the defendant Margaret Owens, who has since married.

The execution of these papers in their form furnish a curious episode in the history of legal transactions. It does not satisfactorily appear from the record that any reason existed for transferring the property to James when John paid the consideration. But people in the humbler walks of life, and particularly of the nationality of the Garvey's, have very extraordinary methods of dealing with real estate. Sometimes it arises from an apprehension of creditors and sometimes from a fear, however unfounded, that the purchaser's wife may in some way interfere with the transfer of the property — an interference, it may be here remarked, which often results to the great benefit of the owner.

It is probably said, however, that the last instrument of the series mentioned, was intended as a mortgage to secure James for advances made and by which, as we have seen, he was to make a transfer of the property to the plaintiff when the prerequisites called for by the instrument had been complied with and occurred. The proof of the execution of these papers, more particularly the latter two which were not recorded, was necessary for the success of the plaintiff, who claims through his father John Garvey, under the last instrument executed between the parties according to its date.

The signature of James to these instruments was questioned and

at the trial was a serious issue. The learned justice presiding, in expressing his views about the controversy, said that although there might be some suspicious circumstances connected with the present-ation of the claim of the plaintiff, yet there were others which supported it; and he referred to the lease already mentioned as one. He determined that the deed of the fourteenth of December and the agreement of December 15, 1869, were both signed by James, expressing his judgment about the signatures upon these papers on comparison with others.

John Garvey, however, who was called as a witness, was asked to look at the signatures of John and James Garvey and to state in whose handwriting they were. And this was objected to as incompetent to prove any transaction between himself and the deceased, the witness being a party through whom the plaintiff claimed title. The objection was overruled and the defendant excepted. He was also asked as to the instruments which were last executed, bearing dates the fourteenth and fifteenth of December, and that question was objected to, on the ground that it related to a transaction between the witness and his deceased brother. The objection was overruled and an exception duly taken. The objection was again repeated when the papers were offered in evidence because they had not been established so far as James Garvey was concerned. And the objection being overruled, an exception was duly taken. Joseph J. Garvey the plaintiff was subsequently called as a witness on his own behalf, and was interrogated in regard to these signatures. An objection was taken but overruled and then an exception was noted.

The question presented upon this state of facts *in limine* is whether the witnesses under section 829 of the Code of Civil Procedure were competent to testify as to these signatures. That section provides that upon the trial of an action, or hearing upon the merits of a special proceeding, the party or person interested in the event, or a person from whom or under whom such a party or interested person derives his interest or title by assignment or otherwise, shall not be examined as a witness in his own behalf or interest, or in behalf of the person succeeding to his title, concerning a personal transaction or communication between the witness and the deceased person. The proof of the signatures of James Garvey, by John Garvey, related to a personal transaction between them, concerning as it

did the former's interest in real estate which James held, he alleged, for his benefit and in trust; and the testimony of the plaintiff was that of an interested party testifying to a transaction with another and the deceased James Garvey, for his benefit and against whose heirs he claimed adversely.

In the case of *Resseguie* v. *Mason* (58 Barb., 89) it was held that the provisions of section 399 of the Code related as well to written as to verbal communications, and that in an action brought against the writer of letters relating to business transactions by the administrator of the person addressed, the defendant was an incompetent person to prove that the letters were written, or that they were received and retained by the person addressed.

In the case of *Denham* v. *Jayne* (3 Hun, 614) it appeared that the defendants held lands in trust for Maria, the wife of one Mark Cornell, and to secure to the defendants certain advances of money made by them for her account. A reference was ordered to determine the amount, and the referee found an amount due to the defendants as to which there was a dispute. It appeared that Mrs. Cornell, the plaintiff in the action originally, died during its pendency, and the then named plaintiff had been substituted as her representative. It also appeared that the complaint verified by her had been prepared under the direction of the defendant Jayne, who was a witness before the referee, and who testified that she signed the affidavit, in his presence, verifying the complaint. He also gave evidence to show generally that he was acquainted with her handwriting. The referee admitted the complaint as evidence of the amount due by the defendants, but the court held that the evidence of Jayne, a party to the action, that he had seen Mrs. Cornell sign it, was testimony of a transaction between them and was not admissible under section 399 of the Code.

Little doubt is entertained, upon an examination of the record in this case, that the property in dispute was originally purchased by John Garvey and should be given to his heir, the plaintiff, in accordance with the agreement of December 15, 1869, and it is to be regretted, therefore, that the judgment may not be affirmed as the justice of the case would seem to require. But no doubt is entertained that the testimony of John Garvey, which was objected to, was incompetent and could not be admitted under the provisions of

section 829 of the Code, to which reference has already been made.

The plaintiff was, of course, interested in the event of this action, and his father John was the person through whom he derived his title and his right of action. The words of the statute just referred to are words of exclusion and, as said in *Holcomb v. Holcomb* (95 N. Y., 325), " are as comprehensive as language can express. Transactions and communications embrace every variety of affairs which can form the subject of negotiation, interviews or actions between two persons, and include every method by which one person can derive impressions or information from the conduct, condition or language of another. The statute is a beneficial one and ought not to be limited or narrowed by construction." But if there were any doubt as to the propriety of admitting the testimony of the plaintiff in this action, for the reason that the proof of the signature may be regarded as an independent fact founded upon relations other than those growing out of the transaction under consideration (see *McKenna v. Bolger*,* decided at this term), there can be none as to the impropriety of admitting the evidence of his father John, between whom and the deceased James the arrangement took place, by which the last instruments were executed and their negotiations consummated. The statement by him that the deceased signed the papers exhibited, or that the signature of James made upon them was his, was in effect a statement that the instrument was the embodiment of an agreement made between them.

The judgment must, therefore, be reversed and a new trial ordered, with costs to abide the event.

Daniels, J., and Davis, P. J., concurred on the ground that John Garvey was not competent to prove the signature of the deceased party to the deed, through which the plaintiff derived his title.

Judgment reversed, new trial ordered, costs to abide event.

*Post, p. 526.