Enos *et al. v.* Hunter.

SALOME ENOS *et al.,* plaintiffs in error, *v.* CHARLES W. HUNTER, defendant in error.

*Error to Sangamon.*

A Court of Chancery will entertain a bill for relief when the defendant is found within its jurisdiction, and the relief sought can be obtained by acting directly upon the person, whether the subject matter of the bill be within its control or not. Of this character are cases for a specific performance of a contract for the conveyance of, or relating to land beyond the jurisdiction of the Court, where the Court will compel a conveyance in accordance with the mode and form prescribed by the laws of the country in which the land is situated; and should it be necessary in order to carry out such a decree, the defendant may be prevented by a *ne exeat* from leaving its jurisdiction, *pendente lite.* This is the rule of the Common Law, and the statute has not changed it.

A Court of Chancery will not entertain a bill where the relief sought renders it necessary that it should act upon the specific thing, unless the subject matter of the litigation is within its jurisdiction. Where land is to be affected by the decree, as in cases of petitions for partition, admeasurement of dower, foreclosure of mortgages, or the enforcement of a mechanic's lien under the statute, the Court must be able to control it directly, or it has no jurisdiction of the case. This, also, is the rule of the Common Law, which the statute has not changed.

The rule of law is, that a wife cannot be allowed to testify to the declarations or confessions made by the husband, either during his life time, or after his decease.

As a general rule, the policy of the law requires that every thing which may affect the title to real estate, shall be in writing. A resulting trust, however, may sometimes be proved by parol.

BILL IN CHANCERY, &c., in the Sangamon Circuit Court, filed by the defendant in error against the plaintiffs in error, to compel the execution of an alleged trust. The substance

of the bill and the proceedings thereon are stated by the Court. A decree for a conveyance, &c. was entered against the defendants below at the July term 1839.

*A. T. Bledsoe,* and *A. Williams* argued for the plaintiffs in error.

*J. T. Stuart & B. S. Edwards,* for the defendant in error.

Where the decree will affect the land directly, in such case the suit must be brought in the county in which the land is situated; but where the decree is to affect only the person, then it may be brought wherever the person is found. In this case the bill prays that defendants be required to convey lands, and the decree rendered in pursuance of such prayer does not affect the land, but the person. 2 Story's Eq. Jur. 47, 48; *Guerrant* v. *Fowler,* 1 Henning & Munf. 4; *Dunn* v. *McMillen,* 1 Bibb, 409; *Austin's heirs* v. *Bodley,* 4 Munroe, 434; *Meade* v. *Merritt,* 2 Paige, 403; *Mitchell* v. *Bunch,* 2 do. 614; *Parish* v. *Oldham,* 3 J. J. Marsh. 591. Where the Court obviously has no jurisdiction, the objection never comes too late; but where the jurisdiction is doubtful, and defendant does not demur, it is too late on the final hearing. 1 Mc Cord's Ch. R. 242.

In relation to the second error assigned, the record no where shows that Salome Enos, who testified, was the wife of Paschal P. Enos, deceased.

The Opinion of the Court was delivered by

CATON, J. This bill was filed in the Sangamon Circuit Court to compel the execution of an alleged trust, by the conveyance of lands lying in Madison county, the alleged trustees all residing in Sangamon county. The bill states that in 1820, the complainant, being indebted to one Schloller in a large sum of money, conveyed the premises in question to one Hempstead, in trust to secure the same; that in 1821 the complainant paid off that debt, and the objects of the trust being accomplished, Hempstead was willing ·and agreed to reconvey the land to the complainant; that for

the convenience of the complainant, for reasons stated in the bill, he wished the title of the land vested in some other person in trust for him; and having confidence in Paschal P. Enos, he prevailed on him to accept said trust, which he agreed to do; that, in pursuance of said agreement, Hempstead and wife conveyed to Enos in 1821 the said premises, for which he paid no consideration to Hempstead or to the complainant; and that at that time, Enos agreed to convey to the complainant upon request; that owing to the lands having depreciated in value, and Enos having removed to Sangamon county, complainant neglected to get a conveyance of the lands to himself till after the death of Enos. The deed from Hempstead to Enos is made an exhibit.

The heirs at law of said Enos, who were minors, and the administratrix of his estate are made defendants, and the bill concludes with a prayer for a conveyance of the land to the complainant.

The record does not show when the bill was filed, but the summons was issued on the 21st of February, 1838, and was returned served on all of the defendants. On the same day an amended bill was filed stating that one of the defendants, Pascal P. Enos, had arrived at full age since the filing of the original bill.

On the 20th of October, 1838, the bill was taken as confessed as to Pascal P. Enos, and at the same time a guardian *ad litem* was appointed for the infants. The administratrix answered, admitting in general terms the truth of the bill, and the guardian *ad litem* filed the usual answer for his wards, denying all knowledge of the truth of the allegations of the bill, and calling for the necessary proof.

On the 19th of July, 1839, the order taking the bill as confessed as to P. P. Enos was set aside, and on the same day the bill was again taken as confessed as to him, as appears from the final decree. No replication appears to have been filed.

On the 19th of July, 1839, a decree was entered, directing the administratrix and Pascal P. Enos to convey all of their right, title and interest in the premises to the complainant,

and appointing a commissioner to convey the like interest of the infants.

On the 2d of March another order was entered, reciting that the conveyances directed to be made by the former de-cree had not been made, and appointing another commissioner to make all of the conveyances.

There are several important questions presented by this record, which will be considered in their order.

In the first place, it is insisted that the Circuit Court of Sangamon county had not jurisdiction in this case, inasmuch as the land, a conveyance of which was sought, is situate in another county, and consequently beyond its control. We will first inquire, whether the Court would have had jurisdic-tion, independently of our statute, and then see whether any change is made by our law.

Where the relief sought could be effected by acting direct-ly upon the person of the defendant, the Court of Chancery has never hesitated to entertain the bill where the defendant is found within its jurisdiction, whether the subject matter of the controversy be within its control or not. Of this char-acter are those cases where the Courts have compelled spe-cific performances of contracts for the conveyance of, or relating to land which is situate beyond its jurisdiction. And in such case the Court will compel a conveyance to be exe-cuted, in such manner and form as may be prescribed by the laws of the country where the land is situate. And, if need be, in order to affect this, they will prevent the defendant from leaving the jurisdiction of the Court, *pendente lite*, by a writ of *ne exeat.*

A remarkable instance of the exercise of this jurisdiction, is to be found in the case of *Penn* v. *Lord Baltimore*, 1 Vesey Sen'r. 444, where Lord Hardwick held, that the Court of Chancery in England had jurisdiction to enforce the spe-cific performance of an agreement between the proprietaries of Pennsylvania and Maryland, relating to the boundaries of those colonies, and decreed accordingly. Many other cases of a similar character are to be met with in the English Chan-cery Reports.

Similar cases are frequently to be found in the United States. In *Dunn* v. *McMillen*, 1 Bibb, 409, it was determined, that the Court having obtained jurisdiction of the person of the defendant, it could decree a conveyance of land lying beyond its jurisdiction, and upon similar principles, in *Dicken* v. *King*, 3 J. J. Marsh. 591, and *Cates* v. *the Heirs of Laflas*, 4 Monroe, 434, it was held, that the Courts within whose jurisdiction the land was situate, could not for that reason take cognizance of the cause, where the defendants resided in another jurisdiction, where they had a right to be sued.

Chancellor Taylor, in *Guerrant* v. *Fowler*, 1 Hen. & Munf. 4, held that the Court had jurisdiction to set aside and cancel a deed for fraud, which had been executed in that State, for land lying in Kentucky; and the Court in that case refers to the case of *Farley* v. *Shippen*, Wythe's Chancery Decisions, 135, where the same Court decreed a performance of an agreement for the conveyance of land situate in North Carolina.

Chancellor Walworth says, in *Mead* v. *Merritt*, 2 Paige, 404: "and it [the Court of Chancery,] may in the same manner compel him to execute a conveyance, or a release in such form as may be necessary, to transfer the legal title of the property, according to the laws of the country where the same is situated, or which will be sufficient in law to bar an action in any foreign tribunal."

These cases all go upon the ground that the relief sought is purely of a personal nature, and that the cause of action is transitory, and follows and attaches to the defendant wherever he may be found. The cause of action arising out of a contract for the sale of land is as much transitory, where the purchaser seeks to have it performed specifically, as where he sues at law to recover damages for the non-performance. The Court can grant the necessary relief by coercing the person of the defendant, no matter where the land may be situated. The fact that the land is beyond the control of the Court, makes no difference in relation to the extent of the relief which the Court may give, except that probably the Court would not compel the defendant to deliver possession to the complainant, after the execution of the deed, which

it might do, if the permises were within its own jurisdiction.

That, however, is not essential to the substantial part of the relief sought, and is matter of discretion with the Court rather than of strict right to the party. The inability to give the party possession will not prevent the Court from securing to him the legal title which the party may convey as well in one place as in another.

In Chancery, however, there are local actions as well as at Common Law. Where, in order to grant the relief sought, the Court must act upon the specific thing, then it will not entertain the suit, unless the subject matter of the litigation is within its jurisdiction. If land is to be affected by the decree, then the Court must be able to control it directly, or else it has not jurisdiction; as where an application is made for a partition, or for an admeasurement of dower, a foreclosure of a mortgage, or to enforce a mechanic's lien under our statute. It is manifest, that unless the Court can reach the premises directly, it cannot afford the relief sought, and consequently will not entertain jurisdiction.

Such, then, being the jurisdiction of the Court independently of our statute, it remains to be seen whether that has changed it.

By the second section of the twenty first chapter of the Revised Statutes, (which is a transcript of the law of 1833,) under which this suit was commenced, it is provided that "the mode of commencing suits in Equity, shall be by filing a bill setting forth the nature of the complaint, with the clerk of the Circuit Court of the county, within whose jurisdiction the defendants, or a major part of them, if inhabitants of this State, reside; or if the suit may affect real estate in the county, where the same, or a greater part thereof shall be situate. If the defendants are all non-residents, then, with the clerk of the Circuit Court of any county. Bills for injunctions to stay proceedings at law, shall be filed in the office of the Circuit Court of the county in which the record of the proceedings shall be."

Unless the suit may affect real estate, it must be commenced in the county of the defendants, or of a major part of

them, as was done in this case, although the land lies in another county and beyond the jurisdiction of the Court. Manifestly, the meaning of the word *affect*, as used in the statute, is to act upon, which indeed is its ordinary signification, and we have already seen, that in compelling a conveyance of real estate, we do not affect or act upon the premises, but upon the person of the defendant alone. We are not to presume, except where the language of the statute manifestly requires it, that the Legislature intended to change the ancient rule by which the Court was governed in relation to its jurisdiction. In this statute, it has used apt and proper words to express that rule, and we entertain no doubt that jurisdiction in this case was properly acquired.

The next objection is, that the witness, upon whose testimony this decree was rendered, was incompetent to prove the declaration of Pascal P. Enos, for the reason that she was his widow. The rule of law undoubtedly is, that the wife cannot be allowed to testify to the declarations or confessions made by the husband, either during his lifetime, or after his death; else that confidence which aught always to exist between husband and wife, would be necessarily impaired, if not utterly destroyed. The lips of each must be ever sealed in the Courts of Justice, in relation to what may have passed between them, except perhaps, sometimes in cases of complaints of one against the other. The law regards the relation of husband and wife of too sacred a character, to allow communications that have passed between them to be divulged. 1 Greenl. Ev. 407, §§ 336–7. But in this record we have sought in vain for the evidence to show that the witness was the widow of Pascal. P. Enos. We may, indeed, suspect so from the fact that her name is the same with Salome Enos, who is made defendant in, and has answered the bill as executrix of Pascal P. Enos, and that the deposition was taken at the house of said defendant, as the magistrate certifies in the caption of the deposition, but this is not sufficient to authorize us to say that she is the widow of Enos. As before remarked, we may suspect so, but it is not proved. It is a matter easily proved if true, and we cannot supply the

want of proof by conjecture. We cannot, therefore, say that the witness was incompetent.

It remains to be seen, whether the proof sustains the case made by the bill, and warrants the decree rendered by the Court.

As it would make no difference in our decision, from the view which we feel constrained to take of the evidence, I am directed by a majority of the Court not to express any opinion whether the agreement, which is alleged in the bill to have been made between the complainant and Pascal P. Enos, by which the alleged trust was created, is within our Statute of Frauds or not, and consequently it is unnecessary to say whether the Court would take notice of the statute in favor of an infant, where it is not insisted on by plea or answer. I shall, therefore, proceed to dispose of the case as if the alleged trust might be proved by parol, like a resulting trust. As a general rule, the policy of the law requires that everything which may affect the title to real estate, shall be in writing; that nothing shall be left to the frailty of human memory, or as a temptation to perjury; and wherever this policy of the law has been broken in upon, and parol evidence admitted, the Courts have been ever careful to examine into every circumstance which may affect the probability of the alleged claim—as the lapse of time, the means of knowledge and circumstances of the witnesses—and it will not grant the relief sought, where the claim has been allowed to lie dormant for an unreasonable length of time, or where the evidence is not very clear in support of the alleged right; especially where no claim has been set up during the lifetime of the trustee, but is raked up and charged against the heirs, who may not be supposed to know any thing about it, or be able to defend it as their ancestor might have done.

In relation to resulting trusts, so late as 1815, Chancellor Kent, in the case of *Boyd* v. *McLane,* 1 Johns. Ch. R. 582, thought it necessary to go into a full examination of all the authorities to prove that parol evidence was competent to establish such a trust against the express provisions of the deed; and although the books on that point had been contradictory, yet

he came to the conclusion that such a trust might.be proved by parol evidence; but then, he says: "The cases uniformly show that the Courts have been deeply impressed with the danger of this kind of proof, as tending to perjury and the insecurity of paper title. And-they have required the payment by the *cestui que trust* to be clearly proved. In the case of *Leach* v. *Leach,* Sir Wm. Grant did not deem the unassisted oath of a single witness to the mere naked declaration of the trustee admitting the trust as sufficient, and there were no corroborating circumstances in the case. He thought the evidence too uncertain and dangerous to be depended upon." In the case of *Boyd* v. *McLane,* the complainant had been in the possession of the premises from the time of the purchase till the commencement of the suit, a period of five years. The fact that the purchase was made with the complainant's money, was positively proved by three witnesses, in addition to which, the confessions of the defendant to the same fact was proved by a number of other witnesses. This overwhelming mass of evidence was held to be sufficient to overcome the sworn answer of the defendant, supported in part by one witness.

This case sufficiently admonishes us of the care with which we should examine the evidence, when it is sought to affect by parol the title to real estate; and certainly that we ought not to overturn a long established legal title on mere suspicion.

What, then, is the nature of the evidence relied upon to support this claim? There is the deposition of but one witness taken, and in answer to a directly leading interrogatory, she says: "I have heard Mr. Enos in his lifetime say that a tract of land was conveyed to him in trust for Mr. Charles W. Hunter, but did not at that time, nor until since his death, know that it was conveyed to him by Hempstead and wife;" and the answer to the next question shows that she did not learn from him, nor did she know during his lifetime what land it was; nor did she know at the time her deposition was taken, except from a receipt for taxes which she had paid on the land, which really amounts to no knowledge at all.

Now the mere statement of this evidence shows, that it comes immeasureably short of sustaining the material allegations of this bill. Although the deed from Hempstead to Enos is made an exhibit by the bill, yet even its execution was not proved on the hearing, so far as the record shows, for it must be borne in mind that the answer of Salome Enos, who was unnecessarily made a defendant in the bill, is not evidence against the other defendants. But even if the execution of this deed had been proved, there is no evidence showing upon what consideration it was made, or contradicting the express declaration which it contains, that a valuable consideration was paid for the land by Enos.

The most that can be claimed for the testimony of the witness is, that Enos held some land in trust for the complainant, but whether it was this land, or some other, we are left entirely in the dark. From this evidence, the complainant might as well have claimed any other land of which Enos died seized as this. This is far from being that clear and satisfactory evidence which the law requires to set aside a long standing legal title, even the muniment of which the complainant never had till after the death of Enos, but which always remained with him till that time, as appears by the testimony of the witness.

The lapse of time, too, is another circumstance in connection with this claim, which is entitled to very great consideration, and which, if it be not conclusive of itself, still admonishes us that we should be very careful and disturb not this legal title without the most satisfactory proof.

Here the conveyance was made to Enos in 1821, and we hear of no pretence of claim by the complainant or any one else, until seventeen years after, and two years after the death of the grantee, who, from aught that appears up to the time of his death, enjoyed the undisputed possession of the premises as his own, and paid the taxes upon the land. If this be not a stale claim, it is not probable that we shall meet with one soon.

The decree of the Circuit Court is reversed with costs and the cause remanded.

*Decree reversed.*