SARAH Q. JOHNSON *et al.*, Defendants in Error, *v.* PATSEY QUARLES *et al.*, Plaintiffs in Error.

1. *Equity — Purchase by trustee with money of cestui que trust — Action to divest title — Parol proof.*— A trust will ordinarily result in favor of one whose money is used by another in the purchase of land, where the conveyance is taken to himself instead of the person who furnished the money, and the facts which create the trust may be proved by parol; but such evidence must be clear and unequivocal, and not merely preponderating. There should be no room for reasonable doubt as to the facts relied upon.

2. *Evidence—Admissions of deceased persons, competency and effect of.*— Evidence of declarations in the nature of admissions by a deceased person, although competent, never amounts to direct proof of the facts claimed to have been admitted by those declarations; and it has sometimes been doubted whether they ought to be received at all when introduced for the purpose of divesting a title created by a deed. However, if properly sustained by other circumstances — as by evidence that the claimant's money was placed in the hands of the deceased for investment; that the property acquired was treated by the parties interested as their property, or by any other facts pointing to them as the equitable owners — such declarations would warrant courts in sustaining the claim.

3. *Evidence—Witnesses, where party is dead—Competency under the statute.*— In suit against the heirs of a deceased person for certain land, on the claim that said estate had been purchased by deceased with the money of plaintiff, and without his consent; the testimony of claimant as to money advanced deceased, and other facts touching the purchase, would be incompetent under the statute pertaining to witnesses. (Wagn. Stat. 1372, § 1.)

*Error to Fifth District Court.*

*T. A. Green*, for plaintiffs in error.

I. A resulting trust is created by operation of law where the purchase money is paid by one party and the conveyance taken in the name of another. (Payne v. Chouteau, 14 Mo. 580 ; Valle v. Bryan, 19 Mo. 423 ; Rankin v. Harper, 23 Mo. 579 ; Kelly v. Johnson, 28 Mo. 249 ; Cloud v. Ivie, *id.* 578 ; Baumgartner v. Guessfeld, 38 Mo. 36 ; Hill. Trust. 92, and notes ; Thompson v. Renoe, 12 Mo. 157 ; Dyer v. Dyer, 1 Lead. Cas. in Eq. 200–1 ; 5 Abb. N. Y. Dig. 248–9, 268.)

II. A resulting trust can be proved by parol evidence, and the admissions of the party holding the legal title are proper evidence as to who paid the purchase money. (Baumgartner v. Guessfeld, 38 Mo. 38 ; Hill. Trust. 94–6 ; Leach v. Leach, 10 Ves. 517 ; Madison v. Andrews, 1 Ves. 58 ; Baker v. Vining, 30 Me. 121 ; Page v. Page, 8 N. H. 187 ; 2 Blackf. 441 ; 4 Blackf. 590 ; Rider v. Kidder, 10 Ves. 364 ; Peebles v. Reading, 17 Penn. 216 ; 8 Serg. & R. 492 ; Irving v. Ives, 7 Ind. 308 ; 30 Mo. 121 ; Am. Law Reg., Sept. '66, p. 675.)

III. The statute (Wagn. Stat. 1372, § 1) does not apply to this case. It only refers to cases where there has been a contract, either express or implied, entered into, and one of the original

parties thereto is dead. This is a case in which Henry P. Poindexter was guilty of a fraud — a wrong, or a violation of confidence and trust—and his heirs are attempting to reap the benefits of his fraud.

*W. Judson*, for defendants in error.

I. Where it is sought, in the face of an absolute deed, to establish an implied trust by parol evidence alone, the beneficiary's ownership of the purchase money must be clearly proved by undoubted evidence. (Farrington v. Barr, 36 N. H. 86; Brown's Stat. Frauds, § 91; 1 Lomax's Dig. 204; Baker v. Vining, 30 Me. 126.)

II. After the death of the nominal purchaser of real property, proof of his declarations while living, that he purchased the property with money belonging to the alleged *cestui que trust*, is not alone sufficient to create a resulting trust. (Snelling v. Utterback, 1 Bibb, 609.)

III. Neither Alexander B. Halladay nor his wife, Patsey Q. Halladay, are competent witnesses in this case — Poindexter, one of the parties to the original cause of action, being dead. (Wagn. Stat. 1372, § 1; Stanton v. Ryan, 41 Mo. 510.) Mrs. Patsey Q. Halladay testifying in behalf of her husband without bringing herself within the qualifying provisions of the statute, is an incompetent witness. (Wagn. Stat. 1373, § 5; Hardy v. Matthews, 42 Mo. 406.)

BLISS, Judge, delivered the opinion of the court.

The plaintiffs filed in the Circuit Court of Buchanan county a petition for partition of certain town lots in the city of St. Joseph, owned by them and the defendants, originally named as heirs of Henry P. Poindexter, deceased, late of Richmond, Virginia. Upon their own motion, Patsey Quarles and A. P. Halladay are made parties, and set up a claim to the whole property, alleging that the said Poindexter purchased it with their money, and, without their consent, took a conveyance to himself. This allegation was denied, and, upon hearing, the Circuit Court found it unsustained

by the evidence, and gave judgment of partition between the original parties, which judgment was affirmed in the District Court.

Were this one of those questions, so far as the main fact is concerned, upon which the court would be bound to carefully weigh and decide upon the preponderance of evidence, we might perhaps be warranted in saying that the money used by Poindexter in the purchase of the lots probably belonged to Mrs. Quarles, or to her and Halladay. But it is not thus that the strong presumption arising from a deed can be rebutted. There is no doubt that a trust will ordinarily result in favor of one whose money is used by another in the purchase of land, when the conveyance is taken to himself instead of the person who furnished the money; nor is there any doubt that the facts that create the trust may be proved by parol. For a long time the courts refused, and they have always hesitated, to permit the language of a deed to be thus contradicted, and a title created contrary to the statute of frauds. But while admitting such evidence for the purpose of creating this resulting trust, the chancellor has always required that it be clear and unequivocal. The insecurity of titles and the temptation to perjury, among the chief reasons demanding that contracts affecting lands should be made in writing, also imperatively require that trusts arising by operation of law should not be declared upon any doubtful evidence, or even upon a mere preponderance of evidence. There should be no room for a reasonable doubt as to the facts relied upon. (Baker v. Vining, 30 Me. 121 ; Malin v. Malin, 1 Wend. 625 ; Sewall v. Baxter, 2 Md. Ch. 447 ; Hollida v. Shoop, 4 Md. 465 ; Boyd v. McLane, 1 Johns. Ch. 582 ; Enos v. Hunter, 9 Ill. 211.)

Was there, then, such clear and unequivocal evidence that the purchase money of the property in question belonged to Mrs. Quarles and Mr. Halladay as to authorize a declaration of trust in their favor ? Affirmatively, there are several witnesses who testify that Poindexter failed in business in 1837 and lost everything ; that he was assisted by the defendant, Mrs. Quarles, and that for some twenty-five years before his death, which happened in 1863, he managed her business, including the carrying on of a large farm in Spottsylvania county ; that the farm yielded a

net income of some $6,000 a year; that he received for his services no special salary or proportion of profits, but lived on the most intimate and friendly terms with his aunt, and was permitted to spend and appropriate whatever he chose. They, or some of them, also testify that Poindexter said at different times that he had purchased and was about to purchase land in Missouri for his aunt, and also that he said that Halladay had furnished part of the money; and one or two identified the land spoken of as lots in St. Joseph. All the evidence as to the material fact that he used the money of the present claimants of the land, and purchased for them, consisted in testimony as to his declarations while living, as to his insolvency in 1837, and as to his being the general manager of Mrs. Quarles' business.

Before considering the evidence and circumstances that rebut the present claim of Mrs. Quarles, it should be remarked that all the evidence that Poindexter used her money in making the purchase in question, is hearsay and inconclusive in its character. Our experience shows the ease with which the declarations of a deceased person may be proved, and warns us not to place too great reliance upon them. Evidence of such declarations, it is true, is admissible, but it never amounts to direct proof of the facts claimed to have been admitted by those declarations; and it is sometimes doubted whether it ought to be received at all when introduced for the purpose of divesting a title created by deed. If, however, these declarations were properly sustained by other circumstances — as by evidence that the claimants' money was placed in the hands of deceased for investment, and that the property was treated by the parties interested as their property, or by any other facts pointing to them as the equitable owners — they would warrant us in sustaining the claim. But, instead of this, all the circumstances relied upon to sustain the declarations of Poindexter are consistent with his ownership, and, in addition, the conduct of the principal witnesses and the parties in interest are inconsistent with their claim.

The chief circumstance relied upon by the claimants is the fact that Poindexter was for many years the general manager of Mrs. Quarles' property, and it is assumed from that fact that this pur-

chase was made for her. But we have seen that he looked after and managed her affairs for over twenty years; that the income was large, and that he was permitted to take whatever he pleased as compensation for his services. Are we bound to assume that, while competent to acquire a property for himself, he was, for a bare livelihood, giving the best years of his life to the interests of his kinswoman, and that during all this long period he had no money or property he could call his own?

But even if this evidence standing alone should be held sufficient to sustain the claim, the record shows other circumstances that greatly weaken its force. This property was purchased in 1857, six years before the death of Poindexter, and there is no evidence that either he or the claimants treated it or regarded it as other than his own. He made a will giving all his property to his sister, the wife of Halladay, but no allusion is made to these lots; and if he had regarded them as belonging to the present claimants, it would have been very natural to have provided for their restoration to their true owners; and Halladay, who was the executor, gave a heavy bond to execute the will — a bond which could only have been warranted by the supposition that the deceased left a valuable estate. But further: upon finding that the will was informally executed, and would be inoperative in Missouri, in 1867 and four years after the death of Poindexter, Mr. and Mrs. Halladay opened a correspondence with his heirs for the purpose of purchasing their interest in the property in dispute. Both of them distinctly recognize it as the property of deceased, and no suggestion is made that Mrs. Quarles has or ever had any interest in it. Thus, for over ten years after its original purchase, the deed was treated as indicating the true ownership of the property. It appears that the deceased and Mrs. Quarles and Mr. and Mrs. Halladay all lived together in one family, and their relations were of the most confidential character. Had this property been at that time regarded as not belonging to the deceased — as being, in fact, the property of Mrs. Quarles and Mr. Halladay — is it possible that its title would not have been arranged, especially when Poindexter was about to die in their midst? and especially is it possible when, as the correspond-

ence shows, Mr. and Mrs. Halladay were keenly disappointed in finding the will inoperative, that they would have omitted to set up the present claim to the property if any such claim had then entered their minds?

Objection was made to the introduction of those letters as evidence, but the writers were the principal witnesses for Mrs. Quarles, the proper foundation was laid by questions in regard to them, and they were clearly competent to contradict the witnesses by showing that when they were written they did not then suppose that Mrs. Quarles had any interest in the property.

The depositions of Mr. and Mrs. Halladay were permitted to be read in favor of the claim of Mrs. Quarles, but were ruled out as to that of Mr. Halladay. Had they been admitted to sustain both claims, the evidence to sustain the alleged advance by Halladay would have been much stronger than to sustain that of Mrs. Quarles. For he not only positively testifies to the advance, but a sufficient reason is given in his wife's expectancy of Poindexter's property why he should acquiesce in leaving it in his hands; and in the letter before referred to he expressly asserted it and claimed reimbursement. The ruling out of these depositions is assigned as one of the errors of the Circuit Court, and we have to consider whether this action is warranted by the statute.

The testimony of Halladay was not excluded because he was a party to the record, but because of the death of Poindexter, against whose heirs he was prosecuting his claim. The case comes clearly within the spirit as well as letter of the statute (Wagn. Stat. 1372, § 1). Poindexter was dead, and was unable to give his version of the transaction. To permit the other party to testify would be to try the case upon the statement of one of the parties "to the cause of action in issue," and is expressly prohibited. (See Stanton v. Ryan, 41 Mo. 510.)

The testimony of Mrs. Halladay on behalf of her husband was also properly excluded, as the issues did not fall within any of the cases provided for in section 5, p. 1373, Wagn. Stat., when she may be a witness. There was some evidence offered and received on behalf of the plaintiffs which should have been rejected, but as this is in the nature of a chancery proceeding,

where the facts are to be found by the court, it is our duty to weigh the evidence in regard to them ; and, in doing so, we have no hesitation in saying that the Circuit Court was fully warranted, without regard to this improper testimony, in arriving at its conclusion.

The other judges concurring, the judgment will be affirmed