## WHITSETT *v.* KERSHOW et al.

| | |
|---|---|
| 4 | 419 |
| 6 | 199 |
| 9 | 111 |
| 4 | 419 |
| 12 | 494 |
| 4 | 419 |
| 14 | 305 |
| 4 | 419 |
| 16 | 42 |
| 4 | 419 |
| 17 | 85 |
| 4 | 419 |
| 19 | 7 |
| 3a | 423 |
| 4 | 419 |
| e32 | 83 |
| 4 | 419 |
| f36 | 392 |
| f38 | 173 |

1. A court of chancery may decree that a conveyance absolute in form is to have the force and effect of a mortgage or trust. But where it is sought, as against a deed absolute, to establish a trust by parol evidence alone, to take the case out of the statute of frauds, the contract must be established by clear, certain and conclusive proofs. The same principle applies when it is sought to take the case out of the statute on the ground of part performance of the parol contract.

2. In the absence of fraud, mistake or undue influence, one ought not to gainsay his own deed, which he has deliberately executed.

3. The burden of proof in such case is on the complainant, who must rebut the presumption that the writing speaks the final agreement, by the clearest and most satisfactory evidence.

4. Under the statute (Laws 1870, p. 62), a complainant in a bill in equity may not of his own motion, and in his own behalf, testify to any material fact in the case, when the adverse parties are defending as heirs. Nor will it alter the case, when a general objection is made before the witness is sworn, whether the testimony elicited was upon the direct or cross-examination.

5. Oral testimony, uncorroborated, of admissions made by the deceased grantee in this case, *held*, insufficient to warrant a reconveyance.

6. It may be competent for a court of chancery to make a decree in favor of a complainant under the prayer for general relief; when the specific relief prayed for is denied, and even where the complainant may have a legal remedy, if the legal remedy be difficult or obstructed.

7. A court of chancery will generally entertain jurisdiction to adjust all matters connected with or arising out of a cause of which it has rightful possession, especially where the action involves a claim against heirs, or relates to the settling of estates.

8. Where a claim for money, due the complainant, is connected with the subject-matter of a suit in equity to procure a reconveyance, and arises out of the original transaction respecting the conveyance of the land in question, such claim may become an appropriate subject for adjudication in a court of equity.

9. Where money thus due the complainant was appropriated by the estate, *held,* that it created a debt which became an equitable lien upon the estate in the hands of the heirs, and, *also,* that under the statute it was a lien at law upon the real and personal estate, to be first satisfied out of the personal assets, but that in such case the administrator should be made a party to such suit.

## *Appeal from District Court of Arapahoe County.*

THIS was a suit in equity brought by Richard E. Whitsett, the appellant, against Elizabeth M. Kershow and John N. and John S. Filmore, the appellees, heirs at law of John S. Filmore, deceased, praying a conveyance by them to him of certain real estate in the city of Denver. The bill substantially shows: That in August, 1861, the complainant was appointed by the governor of the Territory of Colorado adjutant-general; that he performed the duties about nine or ten months; that about the same time the governor also appointed John S. Filmore paymaster; that about November 8th, 1862, Filmore was appointed assistant paymaster in the army of the United States; that complainant received from said Filmore $824.41, as part payment of salary, etc., as adjutant general, and gave said Filmore his pay accounts therefor ; that about June 4, 1862, said Filmore apprised complainant that the government of the United States declined to allow him the said payments; that unless complainant indemnified him in case the said Filmore should fail in receiving credit by the United States for same,

he would be compelled to suffer loss to the amount of such payment, and requested complainant to furnish him security for the amount so paid.

That in consequence of such representations, complainant on June 4, 1862, executed to said Filmore a deed absolute in form of the undivided one-half of lots 15 and 16, block 45, East Denver, and two-thirds of lots 1 and 2, block 46, described, etc., etc., solely for securing and ind emnifying said Filmore against loss of the amount paid to complainant, etc., in case he should be denied credit therefor in settlement of his accounts with United States.

That at the time of giving the information aforesaid to complainant, touching the refusal of the government to allow said payments, said Filmore stated that the government might thereafter allow the same, and agreed that in such event, he would reconvey to complainant said lots, etc.; that about December 25, 1864, said Filmore died intestate, leaving his widow, Elizabeth M., and two minor children, John Norman, about the age of 8, and John Septer, about the age of 6 ; that about May, 1868, said Elizabeth married Jere. Kershow, Esq.; that after the death of said Filmore, and before the marriage of said widow, Amos Steck, administrator of John S. Filmore, filed upon said lots as trustee for the said widow and minor children, and in pursuance of such filing, deeds for said property were by the probate judge issued and delivered to said Steck under and by virtue of an act of Congress, approved May 28, 1864, and the laws of said Territory, etc., he having theretofore entered said lands, in trust, etc., as provided in said act of Congress.  That Feb. 15, 1868, Steck conveyed said lots to Rogers, then administrator, in trust for the use of the said Elizabeth M. and said minor children.  That January 6, 1868, said Rogers conveyed to said Elizabeth M., then administratrix, etc., in trust for the heirs at law of said J. S. Fillmore ; that the payment by said J. S. Fillmore to complainant has finally been credited and allowed by the United States, in the settlement of the accounts of said Filmore

as paymaster as aforesaid; that since such allowance and credit complainant has applied to said Elizabeth to reconvey to him said premises, etc.

Prays that said Elizabeth M., John Norman, and John Septer be summoned and required to answer, etc., but not on oath; and that said Elizabeth be required to convey to complainant said premises; in default the master to convey. Prayer for general relief, etc.

Elizabeth M. Kershow was appointed guardian *ad litem* to infant defendants. Answer of infants in common form.

Answer of Elizabeth M. Kershow. Admits the conveyance by complainant to J. S. Filmore, as charged in the bill; denies that it was for the purpose charged; denies the promise of Filmore, charged, to reconvey; admits the death of J. S. Filmore intestate, at the time charged; admits the heirship and successorship charged; admits her marriage with Kershow; admits the filing by Steck as charged; the conveyance by Steck to Rogers and Rogers to respondent; admits that all said conveyances were upon the trusts charged; denies the demand for reconveyance by complainant charged, or that complainant was entitled to such reconveyance; neither admits nor denies the residue of bill, and calls for strict proof.

Alleges that June 3, 1861, complainant conveyed said lots to Stout, and at the date of his conveyance to J. S. Filmore, had no title or claim to said lots; that J. S. Filmore was compelled to purchase of Stout, and paid therefor $700; that said J. S. Filmore acquired his right to claim said lots under the act of Congress, etc., and through the title acquired from Stout, and not from said complainant.

The defendant also pleaded the statute of frauds. The case was referred to the master to take proofs. The cause was heard upon the bill, answer and master's report, and a decree rendered dismissing the bill. To reverse this decree Whitsett appealed to this court. The evidence, deemed material, is stated in the opinion.

Messrs. WELLS, SMITH & MACON, for appellant.

Messrs. CHARLES & DILLON, for appellees.

STONE, J. Notwithstanding the great contrariety of decisions upon the subject, it may be considered as well settled that upon proper proofs of intent of the parties, a court of chancery may decree that a conveyance absolute in form is to have the force and effect of a mortgage or trust. 2 Lead. Cas. Eq. 1013; Bispham's Eq., § 155; 2 Wash. Real Prop. (4th ed.) 49; *Lindaur* v. *Cummings, Ex'r,* 57 Ill. 195. But it is equally well settled that where it is sought as against a deed, absolute in terms, to establish a trust by parol evidence alone, in order to take the case out of the statute of frauds, the contract must be established by clear, certain and conclusive proof, unequivocal in all its terms. *Johnson* v. *Quarles,* 46 Mo. 426; *Nevius* v. *Dunlap,* 33 N. Y. 680; *Lindaur* v. *Cummings, Ex'r, supra;* 2 Lead. Cas. Eq. 980–993, and cases cited. The principle is the same as that applied where it is sought to take a case out of the statute on the ground of part performance of a parol contract. 1 Story's Eq. Jur., § 764. The strictness of this rule rests upon the same principles as underlie the statute of frauds itself. In the absence of fraud, mistake and undue influence, it is said that a man ought not to gainsay his own deed, or any writing which he has deliberately executed; and that "a grantor who makes an absolute conveyance intending that the beneficial interest shall remain in him, is guilty of a gross folly or actuated by a sinister design, and cannot reasonably ask that the rules of law should be suspended to extricate him from the situation in which he has voluntarily placed himself." 2 Lead. Cas. Eq. 978.

This branch of equity jurisdiction requires nice discrimination, and will not be exercised unless all the facts relied on to give relief are established beyond a reasonable doubt, and this even where the ground of relief is mistake. *Nevius* v. *Dunlap, supra;* 1 Story's Eq. Jur., § 157. The burden

of proof is throughout on the complainant, who must rebut the presumption that the writing speaks the final agreement, by the clearest and most satisfactory evidence. Story's Eq., § 157 ; 2 Lead. Cas. Eq. 980.

It is sought to be shown in this case by parol evidence alone, that an absolute deed made by complainant in 1862, to Filmore, deceased, conveying certain lots in the now city of Denver, was intended as security for a sum of money advanced by the deceased as paymaster in the army, to complainant, on account of salary as adjutant-general, upon a verbal agreement that the property was to be reconveyed when the account for such salary should be allowed by the government.

Against a general objection to his competency as a witness in the case, the complainant testified before the master in his own behalf, in support of all the material allegations in the bill, and the first question presented for our consideration is, as to the competency of this testimony.

The first section of the act of Feb. 11, 1870, relating to the competency of witnesses in civil cases, takes away the disqualification, by which, at common law, parties to civil actions and persons interested in the event thereof were not permitted to testify, and renders them competent, except as thereafter provided in the act. Section two of said act provides that "no party to any civil action, suit or proceeding, or person directly interested in the event thereof, shall be allowed to testify therein of his own motion or in his own behalf, by virtue of the foregoing section, when any adverse party sues or defends as the trustee or conservator of any idiot, lunatic or distracted person, or as the executor or administrator, heir, legatee, or devisee of any deceased person, or as guardian or trustee of any such heir, legatee or devisee, unless when called as a witness by such adverse party so suing or defending, and also, except in the following cases, namely,"—then follows a number of specified cases, none of which, however, apply to this

case as heard in the court below. Under this section we think the complainant was clearly incompetent to testify as a witness in the case.

But it is contended by counsel for appellant, that if incompetent to testify as to the agreement respecting the conveyance between the deceased and the complainant, the latter was nevertheless competent to testify to the identity of certain exhibits ; and that his evidence upon cross-examination thereto was also admissible. Upon the additional briefs filed upon this point, we have more fully investigated the law in order to determine whether the complainant was competent to testify in this case for any purpose whatever.

In Massachusetts, under a statute that admits parties to testify, except "where one of the original parties to the contract or cause of action in issue and on trial, is dead," etc., it is held that the test of competency is "the contract or cause of action in issue and on trial ;" not the fact to which the party is called to testify ; that if the cause of action was a matter transacted with a person who has deceased, the other party to that transaction being also a party to the suit, is not admitted as a witness at all, and cannot testify to any fact in the case. *Granger* v. *Bassett*, 98 Mass. 468.

In New York, where the statute prohibits a party from testifying touching a "transaction" or a "communication" between the party testifying and a deceased person, which relates to the subject of the litigation, it was held that the defendant could not testify to the identification of letters written by himself to the intestate, or that such letters were found amongst the papers of the deceased, in order to show that the latter had received and retained them ; such letters relating to the claim in controversy. *Ressiquie* v. *Mason*, 58 Barb. 99.

In Missouri, under a statute like that of Massachusetts, the holding has been the same as that in *Granger* v. *Bassett, supra; Johnson* v. *Quarles*, 46 Mo. 429 ; *Looker* v. *Davis*, 47 id. 145.

While the language of the statutes of the States referred to, rendering incompetent the testimony of such witnesses, as to certain matters in issue in the action, is construed by the courts, in the cases cited above, to exclude the witness for any and all purposes, with still greater conclusiveness it must follow by the express terms of the language of the disqualifying section of our own statute, that no party to such action "shall be allowed to testify therein of his own motion," etc.; that, except in the cases where such party is expressly rendered competent, he is disqualified from testifying to any fact in the case.      Accordingly we find that the supreme court of Illinois, in construing the statute of 1867 of that State, which in its language and provisions is identical with our own, hold that the statute is not of doubtful meaning, and that under its operation no party to any civil action, suit or proceeding, or person directly interested in the result thereof, should be allowed to testify therein of his own motion, or in his own behalf, when any adverse party sues or defends as executor, administrator, heir, legatee, or devisee, of any such deceased person, except in the cases specified in the statute as exceptions to the prohibitory clauses.      *Boynton* v. *Phelps*, 52 Ill. 218 ; *Merritt* v. *Atkins*, 59 id. 20 ; *Stone* v. *Cook*, 79 id. 428 ; *Alexander* v. *Hoffman*, 70 id. 117 ; *Langley* v. *Dodsworth*, 81 id. 87 ; *Branger* v. *Lucy*, 82 id. 92.

Hence, when such party is offered as a witness, and before he is admitted to testify, it should be made to appear from his status in the case whether he is brought within any of the enumerated exceptions to the disqualifying section of the statute.

In this view the complainant being both a party in the action, and directly interested, and seeking to testify on his own motion, and in his own behalf, wherein the adverse parties were defending as heirs of the deceased Filmore, the complainant was clearly incompetent to testify, not only as to the verbal contract alleged to have been made between the deceased in his life-time and the same com-

plainant, but being put upon the stand to testify generally he was not a competent witness to testify to any material fact in the case. Nor does it alter the case that certain evidence was given by such witness upon cross-examination, being disqualified by statute as a witness altogether. And before going upon the stand, a general objection having been made by the defendants to his testifying in the case on the ground of his incompetency, whatever testimony he gave, whether upon direct or cross-examination, must fall together, and cannot be considered in the case. The object of the statute is obviously to place the parties to a contract upon an equal footing as witnesses respecting such contract; which clearly would not be the case, if, when the mouth of one was closed in death, the other were allowed to give his version of the transaction beyond the power of contradiction from the deceased party. Setting aside the testimony of the complainant as to his having paid to Filmore the amount due to Stout, which the deed "K" was given to secure, we may take the evidence of Charles Cheever that said amount was paid to Stout by Filmore as implying that the latter paid the same as of his own money, but in view of the further testimony of Charles Cheever, that Filmore was fully informed of the execution of the prior conveyance of Whitsett to Stout by deed "K" and of the bond of Stout to re-convey, and of the intent of those instruments, that it was all talked over between Filmore and the witness Cheever at the time Filmore took the deed from Stout and paid the amount due him from Whitsett, we think it immaterial whether Whitsett furnished the money so paid to Stout or not, since we may conclude that Filmore accepted the deed from Whitsett to the property subject to the Stout deed as a prior lien which would not impair the consideration of the transaction between Filmore and Whitsett.

The main question then is, disregarding the incompetent testimony of the complainant, are the allegations of the bill respecting the transaction between the deceased and the complainant proved by the evidence in the case?

Clayton testified that Filmore told him that he had advanced money to Whitsett on account of the latter's salary as adjutant-general, and that the government had refused to allow the account. That, in another conversation, Filmore stated that he could get certain property of Whitsett in settlement of the account, and asked witness his opinion as to what the property was worth. That in a third conversation, Filmore stated to witness that "he had taken the property for the account." That he "had received the property in settlement." In answer to the question upon cross-examination whether Filmore stated that the property was taken in full settlement or not, the witness says : "My recollection is, that was in settlement in full."

Dudley testifies in substance as follows : I was assistant quartermaster; Filmore paid me salary; he told me that amount paid me had been stopped against him in his account at Washington; subsequently, in several conversations, he requested me to refund the amount, but as I was unable to do so, I deeded him lots in Denver upon his promise to hold the property in security and re-deed to me if the account was allowed. He told me that he had a similar understanding with Whitsett as to his account, and that W. was going to deed, or had deeded to him property as security for the salary paid W. which had also been stopped, and that if the account was allowed, he, F., was to re-convey to W. I think he said that W. was going to secure him by deeding some property, and thought I ought to do the same; I am positive that if these accounts were allowed he was to re-deed to me, and that he had a similar arrangement with W.; think one of those conversations was on the day I executed my deed.

D. A. Cheever, as to this point, testifies : "I heard a conversation between Filmore and Whitsett in which W. admitted that he owed Filmore overpay received by him as salary; the talk was in reference to the lots opposite the mint which 'were to be deeded by W. to F. in payment of that overpay;' the conversation was to the effect that W.

should make a transfer of the property to re-imburse F. for salary paid W. for which F. had received no return, because it was improperly paid, or paid without authority."

Ex-Governor Gilpin testifies :   "I learned from F. that as paymaster, he endeavored to, and did fortify himself by taking real estate security for money paid by him."

Charles G. Cheever, upon the same point, says :  "I was the county clerk and recorder and was also agent of F. to collect rents, and to have charge of his property; a deed from F. to W. of property (same as described in bill of complaint) was delivered to me by F. for record.   When he brought the deed to me F. stated that 'he had taken the property contained in this deed on account of settling or securing moneys as salary paid by him, Major Filmore, to Mr. Whitsett as adjutant-general, which moneys had been disallowed by the United States government;' I am positive I give the substance of the words used."

This was all the testimony in the case (aside from that of complainant himself) respecting the character of the conveyance, not evidenced by the deed itself.   Measuring this, in view of the rules and principles we have noted at the outset, we deem it of too vague a character to overthrow the legal effect of the conveyance.

By reference to the testimony, it will be observed that Clayton says the conveyance was spoken of as made "in settlement in full," of the salary advanced W.   D. A. Cheever says the deed was to be made in "payment of the overpay," and to "re-imburse F. for salary paid W.," and for which W. "admitted owing F."   Dudley is uncertain whether the Whitsett conveyance had been made, or was to be made, but understood that an arrangement similar to one with himself had been made, or was to be made with W. ; while Charles G. Cheever says that F. declared to him that he had taken the deed from W. "'on account of *settling or securing* moneys paid as salary" to W.   Not a single witness is able to state with certainty that Filmore admitted the deed to have been made as a security merely.   Upon

oral testimony so uncertain, ambiguous and conflicting as this, for the purpose of proving the declarations of a deceased party, alleged to have been made twelve years before, we certainly would not be warranted in decreeing to change the legal character of a written instrument, executed under seal voluntarily, by the party now seeking to change its terms as against heirs of the property under such conveyance, and without proof of fraud, accident or mistake, as an element affecting the purpose or validity of the deed. *Lindaur* v. *Cummings, Ex'r*, 57 Ill. 200 ; *Johnson* v. *Quarles*, 46 Mo. 427 ; *Nevius* v. *Dunlap*, 33 N. Y. 680. Indeed, it is held in *Johnson* v. *Quarles*, and *Lindaur* v. *Cummings, Ex'r, supra*, that such admissions alone as are now sought to be proved are insufficient to establish the contract, or ground of relief, such as is here prayed. In *Johnson* v. *Quarles*, the court say : "Evidence of such declarations, it is true, is admissible ; but it never amounts to direct proof of the facts claimed to have been admitted by those declarations, and it is sometimes doubted whether it ought to be received at all, when introduced for the purpose of divesting a title created by deed. If, however, these declarations were properly sustained by other circumstances, as by evidence that the claimant's money was placed in the hands of the deceased for investment, and that the property was treated by the parties interested as their property, or by any other facts pointing to them as the equitable owners, they would warrant us in sustaining the claim."

In the case before us it is noticeable that there is a total absence of any testimony in corroboration of the truth of the admissions sought to be proved, such as that the complainant ever treated the property conveyed as his own, or by the payment of taxes, or assuming charge and care of the property, or by any other conduct that he ever sought to make it manifest that he was still the equitable owner thereof, during the eight years that elapsed between the date of the conveyance and the commencement of the action. As to this branch of the case, therefore, the court

below did not err in refusing to decree a reconveyance of the property in question.

But it is insisted, by counsel for appellant, that the court below erred in refusing to decree, as alternative relief, the payment by defendants to complainant the amount of money which was finally allowed by the government as due complainant upon his account as salary.

The record discloses the fact that this amount, $824.41, due Whitsett on his salary account as adjutant-general, was allowed by the government, but credited to the account of Filmore. At his death, Filmore was indebted to the United States in a large amount, and when the Whitsett account was allowed, it was credited to Filmore's account as paymaster, and was applied in reducing, to that extent, the indebtedness of Filmore. To this amount, with legal interest thereon from the date of allowance of said sum by the government in the account of the deceased therefor, the appellant, Whitsett, is justly entitled. It is contended, however, by counsel for appellees, that for this claim, the appellant had a legal remedy; and that, besides, it cannot be decreed in this action for the reason that the bill does not specifically ask for such alternate relief. We think it is clearly competent for a court of equity to make such decree under the prayer for general relief, and even where the specific relief prayed for in the bill is denied. *Capps* v. *Holt*, 5 Jones' Eq. (N. C.) 153; *Hawley* v. *Sheldon*, Harrington's Ch. 420; *Parkhurst et al.* v. *Van Courtland*, 1 Johns. Ch. 274.

Whenever the remedy, though legal, is difficult or obstructed, or lost without fault of the party seeking, or inadequate, a court of chancery, to prevent litigation, circuity of action or inconvenience, will generally entertain jurisdiction to adjust all matters connected with, or arising out of a cause of which it has rightful possession; and this especially where the action involves a claim against heirs, or relates to the settling of estates. *Queen* v. *Drummond*, 31 Md. 71; *Ellis* v. *Gosney's Heirs*, 1 J. J. Marsh. 347 *;

*Steere* v. *Hoagland*, 39 Ill. 264; *Pratt* v. *Law*, 9 Cranch, 494; *Nagle* v. *Newton*, 22 Gratt. 819; *Cox's Heirs* v. *Stroude*, 2 Bibb, 273; *Schilling et al.* v. *Rominger* (*ante*, p. 100); 1 Story's Eq. Jur., § 457.

The claim for this money is connected with the subject-matter of the suit, and arises out of the original transaction respecting the payment by F. of the salary of W., the conveyance of the land in question being one branch of the same transaction. Nor was the legal remedy of W. to recover the amount from the estate without difficulty at its inception. Under our statute the claim was required to be preferred against the estate within one year after letters of administration were granted, while this account was not allowed, so as to give W. such right of a ctiontherefor until nearly four years after Filmore's death, and after such letters had been granted. For a similar reason it was held in Massachusetts, that a suit in equity might be maintained in the nature of a creditor's bill against the executor and devisees, where, under the statute, the period of limitation for proof of debts had expired. *Fairfield* v: *Fairfield*, 15 Gray, 596. Through the efforts of Whitsett chiefly, his vouchers were allowed; and yet when allowed the money passed to the estate, and the heirs received the benefit of it. It became vested in the estate, but in the nature of a trust for the benefit of Whitsett, and is, therefore, an appropriate subject for adjudication in a court of equity. 1 Story's Eq., §§ 532–535.

The amount of money due W., and thus appropriated by the estate, created a debt which became an equitable lien upon the estate in the hands of the heirs (*Morris* v. *Mowatt*, 2 Paige's Ch. 590), and such debts become, under statutes like our own, liens at lawupon the estate, personal and real, but to be first satisfied out of the personal assets. *Vansycle* v. *Richardson*, 13 Ill. 173, and cases cited. But the administrator of the estate of the deceased was not made a party defendant in this suit, and has not, therefore, had his day in court as such personal representative of the

deceased, and since we conceive it necessary that the administrator, if there be one, should be made a party defendant before final decree can be rendered for the payment of money out of the assets of the estate, in order that such payment may be made from the personal assets, if there are any, the decree of the court below will be reversed and the cause remanded with directions that the complainant have leave to amend his bill so as to make the administrator a party defendant ; and to amend in other respects as he may be advised, without prejudice to the testimony already taken; and that upon such further proceedings being had, as may be necessary, a decree be rendered not inconsistent with the views herein expressed.

*Reversed and remanded.*

THATCHER, C. J.    I concur in the result.

Mr. Justice ELBERT having been of counsel in the court below, did not sit in this case.