Berry v. Hartzell.

BERRY *et al.* v. HARTZELL, *Appellant.*

1. **Contract; DECEDENT : EVIDENCE.** Whether a contract for sale of land was entered into by a decedent and another, could not be established by the evidence of the latter, but a statement made by him, while being examined as a witness, may be construed as an admission that if there was, in fact, a contract, it had not been performed on his part.

2. **Practice : OBJECTION TO COMPETENCY OF WITNESS.** Objection to the competency of one as a witness should be made in the trial court.

3. **Sale of Land : CONTRACT OF DECEDENT, EVIDENCE OF.** Evidence of loose declarations and admissions of one deceased is insufficient to establish a contract made by him for the sale of land, unless strongly corroborated by evidence of so cogent a character as to leave no room for doubt in the mind of the chancellor who heard the cause.

*Appeal from Bates Circuit Court.*—HON. J. B. GANTT, Judge.

AFFIRMED.

*Railey & Burney* for appellant.

(1) Defendant went into possession of the land in controversy under parol contract of sale in October, 1878 ; made improvements, and paid out money for said Baskin, prior to his death. This was sufficient to take the case out of the statute of frauds. *Adair v. Adair,* 78 Mo. 633 ; *West v. Bundy,* 78 Mo. 407, 410 ; Wood on Frauds, p. 826, sec. 488, and cas. cit.; *Tatum v. Brooks,* 51 Mo. 148. (2) Defendant was in possession of the land, and the contract upon his part had been wholly performed before the death of Baskin. The statute of frauds can, therefore, constitute no defence against the relief prayed for by said defendant. *Winters v. Cherry,* 78 Mo. 344. (3) Baskin, in his lifetime, had mortgaged

the land for all it was worth. He and his wife had made arrangements to move to Kansas, or on the Barber place, and evinced no disposition to claim the property as a homestead until after Baskin's death, and not until Mrs. Baskin married J. J. Berry, in 1881, two years after Baskin's death. She received, in conjunction with her husband (Baskin), the one thousand dollars—being the full value of the tract in controversy; and with part of this sum, according to her own testimony, bought the Barber land for four hundred and fifty dollars, and, although the deed was formerly made to Baskin, yet she had his deed destroyed and a deed made to her absolutely for the property bought of said Barber. No homestead claim was ever filed by either Baskin or wife, but, on the contrary, they moved out of the main building in October, 1878, and delivered possession thereof to defendant, and Mrs. Baskin, after her husband's death, agreed and promised to make a deed to defendant for same. The homestead claim was, therefore, a fraud and subterfuge; and the court seems to have ignored the first count, setting up same, in its decree. (4) Mrs. Baskin was clearly an incompetent witness. *Holman v. Bachus*, 73 Mo. 51. The competency of Mrs. Baskin as a witness was not raised, yet the court must determine the legal effect of her testimony. She knew nothing of the contract, and her testimony is nearly altogether hearsay. It ought not, therefore, to be entitled to any weight. *Bartlett v. O'Donoghue*, 72 Mo. 564. (5) She suffered defendant to remain in peaceable possession from 1879 to 1883, without making any claim or demand for homestead, but, on the contrary, agreeing to make a deed, until she married her present husband. No wonder, therefore, the court below passed the claim of homestead *sub silentio*.

*W. J. Terrill* for respondents.

(1) To decree a specific performance is largely

within the discretion of the chancellor, and cannot be awarded unless the terms of contract and its performance are clearly proven, and are not indistinct, or indefinite. *Paris v. Halley*, 61 Mo. 453, 459 ; *Taylor v. Williams*, 45 Mo. 84 ; Wat. Spec. Per. [Ed. 1881] secs. 146, 152, 158, p. 190 ; *Johnson v. Quarles*, 46 Mo. 427 ; *Tedford v. Trimble*, 3 West. Rep. 442 ; s. c., 87 Mo. 226. (2) The defendant could not plead one consideration of payment—four hundred and fifty dollars—and recover upon another (not pleaded without amendment to his answer had at the time), the mere procuring of the trade to sell the Cass county land by Barber—the payment therefor having actually been made by Baskin. *Newham v. Kenton*, 79 Mo. 382-5 ; *Jackson v. Hardin*, 83 Mo. 186 ; *Priest v. Way*, 3 West. Rep. 256-9 ; s. c., 87 Mo. 16. (3) It is presumed, where there is conflicting testimony, and there is evidence to support the finding of the judge in equity cases, that the chancellor took into consideration the character of the witnesses, and gave their testimony its full weight, harmonized with all the facts and circumstances in evidence, and the court would defer much to the opinion of the trial court. *Sharpe v. McPike*, 62 Mo. 300-309 ; *Erskine v. Loewenstein*, 82 Mo. 301-309 ; *Chouteau v. Allen*, 70 Mo. 336. (4) But the equitable defence here interposed in a suit at law did not change it, in this respect, from the rule applicable to a suit at law, and the court would not reverse where there was evidence to support the finding, and especially where no injustice is done the defendant. The issues were questions of fact, and no documentary evidence to be given legal effect. *Shulenberg v. Boothe*, 65 Mo. 475 ; *Birney v. Sharp*, 78 Mo. 77 ; *Dewar v. Bank*, 1 West. Rep. 628, and cas. cit.; *Gregory v. Chambers*, 78 Mo. 298, and cas. cit. (5) The widow was a competent witness, as a party in interest of this land. The case cited by appellant is not in bar, the widow there being not a party in interest. The objection was not made at

the time. *Tingley v. Cowgill*, 48 Mo. 291–296; *Fugate v. Pierce*, 49 Mo. 444; *Primm v. Raboteau*, 56 Mo. 412; *Bell v. Railroad*, 86 Mo. 599–607, and cas. cit. (6) The testimony by defendant as a witness, so far as excluded by the court, was incompetent under the statute, Baskin being dead. *Johnson v. Quarles*, 46 Mo. 424–7; *Weiland v. Weyland*, 64 Mo. 168–170. (7) There was no intent to abandon the homestead right, even by the widow, and there could be no abandonment as against minor children. *Rogers v. Mayes*, 84 Mo. 523.

SHERWOOD, J.—The plaintiff brought suit for certain land in Bates county, claiming it as their homestead, under A. J. Baskin, the late husband of Mrs. Berry, and the father of the minor plaintiffs. The legal title was admitted to have been in Baskin, acquired by deed, in 1874, and he "farmed the land as a home." The defence, set up in the answer, alleged a purchase of the land from Baskin in his lifetime, and a delivery of possession by Baskin, a payment by defendant of the purchase money in full, which was used by the deceased in buying another homestead in Cass county, now occupied by plaintiff, and that a promise by the decedent to execute a general warranty deed to defendant was made, which promise was not kept. The answer concluded with a prayer which is tantamount to a prayer for specific performance, *i. e.*, that the title be divested out of plaintiffs, and vested in defendant, in accordance with the contract.

The main question before the trial court, therefore, was, whether such a contract was entered into by the deceased and the defendant. Of course, his testimony could not establish it, but, while being examined on other matters, he stated, "I did not pay any money for that land, nor was anything given for the payment." This admission went to the extent of showing that he had not performed the contract, if a contract there was, on his part. And, besides, the testimony of Mrs. Berry,

who was a competent witness in her own behalf, and in behalf of her minor children ( *Moore v. Moore*, 51 Mo. 118 ; *Joice v. Branson*, 73 Mo. 28, and cas. cit. ; *Owen v. Brockschmidt*, 54 Mo. 285 ; *Evers v. Life Association*, 59 Mo. 429 ; *Harriman v. Stowe*, 57 Mo. 93 ; *Steffen v. Bauer*, 70 Mo. 404 ), shows that the four hundred and fifty dollars, which was paid to Barber for the Cass county place, was paid out of the one thousand dollars, raised by Baskin, by a mortgage he gave on the premises in controversy, shortly before he died, and on this point there is no conflict in the testimony. The case of *Holman v. Bachus*, 73 Mo. 49, does not apply in this instance, because Mrs. Berry was not testifying to conversations had with her husband, but in relation to facts. And, at all events, it is too late to make the point here, that she was incompetent to testify, when no such objection was made in the court below.

No error was committed in rejecting defendant as a witness to prove the contract with the Baskins. *Chapman v. Dougherty*, 87 Mo. 617 ; *Meier v. Thieman*, 90 Mo. 433. The contract remained unproven, except the loose declarations and admissions of Baskin, said to have been made shortly prior to his death, which evidence was entirely insufficient, unless strongly corroborated by evidence of so cogent a character as to leave no room for reasonable doubt in the mind of the chancellor, who heard the cause. There was no such corroboration. The rule, just announced, as to the cogency of testimony necessary in cases of this sort, in respect to resulting trusts, is firmly established in this state ( *Johnson v. Quarles*, 46 Mo. 423 ; *Ringo v. Richardson*, 53 Mo. 385 ; *Kennedy v. Kennedy*, 57 Mo. 73 ; *Forrester v. Scoville*, 51 Mo. 268), and no good reason is perceived why the same cogency of testimony is not necessary to establish a similar implied trust, or trust by operation of law, which has its origin in a contract between a vendor and a vendee, such as is claimed to exist in the present in-

stance (Adams Eq. *128; 2 Story Eq. Jur., secs. 789, 790, 1212, 1201), since, in either case, the effect of the claim, if successful, will be the divestiture of the legal title of the adverse party, and the accomplishment of the transfer of that title to the claimant.

Upon this point, Judge Bliss aptly remarks: "The insecurity of titles, and the temptation to perjury, among the chief reasons demanding that contracts, affecting lands, should be in writing, also, imperatively require that trusts, arising by operation of law, should not be declared upon any doubtful evidence, or even upon a mere preponderance of evidence. There should be no room for a reasonable doubt as to the facts relied upon." *Johnson v. Quarles, supra.* Touching this subject, Judge Story says: "In order to take a case out of the statute, upon the ground of part performance of a parol contract, it is not only indispensable that the acts done should be clear and definite, and referable, exclusively, to the contract, but the contract should also be established, by competent proofs, to be clear, definite, and unequivocal in all its terms. If the terms are uncertain or ambiguous, or not made out by satisfactory proofs, a specific performance will not (as, indeed, upon principle, it should not) be decreed. The reason would seem obvious enough; for a court of equity ought not to act upon conjecture; and one of the most important objects of the statute was to prevent the introduction of loose and indeterminate proofs of what ought to be established by solemn written contracts." 1 Story Eq. Jur. [12 Ed.] sec. 764.

That eminent jurist, Lord Redesdale, has very forcibly observed: "The statute was made for the purpose of prevention of perjuries and frauds, and nothing can be more manifest to any person who has been in the habit of practicing in courts of equity, than that the relaxation of that statute has been the ground of much perjury and much fraud. If the statute had been rig-

orously observed, the result would probably have been that few instances of parol agreements would have occurred; agreem ents would, from the necessity of the case, have been reduced to writing; whereas, it is manifest that the decisions on the subject have opened a new door to fraud; and that, under pretense of part execution, if possession is had in any way whatsoever, means are frequently found to put a court of equity in such a situation that, without departing from its rules, it feels itself obliged to break through the statute; and I remember it was mentioned in one case, in argument, as a common expression at the bar, that it had become a practice '*to improve gentlemen out of their estates.*' " *Lindsey v. Lunch*, 2 Sch. & Lef. 4, 5, 7; see, also, *Ells v. Railroad*, 51 Mo. 200.

Again, it is our practice to defer somewhat to the conclusion reached by the trial court on matters of fact, where much depends on the demeanor of the witnesses. *Chouteau v. Allen*, 70 Mo. 336; *Erskine v. Loewenstein*, 82 Mo. 301.

Holding these views, the judgment is affirmed. All concur.