### ARTHUR LATHAM *et al.*
### *v.*
### JOHN HENDERSON *et al.*

1. RESULTING TRUSTS. L purchased certain lands, and paid therefor $2,500.00 —$1,200.00 of which belonged to his son C, and took the deed therefor in his own name. Shortly after, C died, leaving his father and mother and five brothers and sisters, as his heirs, and, subsequently, L, becoming heavily indebted, conveyed the lands to the brothers and sisters of C, without consideration: *Held,* in a suit against L, to subject these lands to the payment of his debts, that the heirs of C had a resulting trust therein, to the extent of twelve undivided twenty-fifths; and that the legal title to the remainder was held by them, subject to the lien of the creditors of L, as also one-seventh of the twelve twenty-fifths, which belonged to L, as one of the seven heirs.

2. SAME—*determining extent of—in a particular case.* And in determining the extent of this resulting trust, only such funds belonging to C as were actually used, and then held by L, in the purchase of the lands, can be taken into account. Demands against third persons, belonging to C, and in L's hands for collection, and paid subsequent to the purchase, cannot be considered in fixing the extent of his interest.

APPEAL from the Circuit Court of McLean county; the Hon. JOHN M. SCOTT, Judge, presiding.

24—47TH ILL.

This was a bill in chancery, filed in the Circuit Court of McLean county, by John Henderson and others, appellees, against Arthur Latham and others, to set aside a certain deed made by one W. H. Latham, to his co-defendants, for a large quantity of land, and subject the same to the payment of certain indebtedness due from him to complainants.   The further facts in the case are fully stated in the opinion.

Mr. O. T. REEVES, for the appellants.

Messrs. PACKARD & DICKINSON, for the appellees.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

John Henderson & Co. recovered a judgment against W. H. Latham by attachment, in the McLean Circuit Court, and then filed this bill in chancery to set aside a deed made by him to his co-defendants herein, for the lands upon which the attachment had been levied.   The indebtedness was fully proved in this proceeding, and the only question in the record is, the extent of the interest of W. H. Latham in the lands in controversy, so far as relates to creditors.

It appears that the lands were all entered by William H. Latham, in 1853, at the Government Land Office, with money, a part of which belonged to his son Charles, then mining in California.   The title was taken by the father in his own name.   Charles, soon after, died, leaving five brothers and sisters, and his father and mother, as his heirs.   William H. Latham retained the legal title until 1861, when, being at the time very heavily in debt, he conveyed the lands now in controversy, to his children, the brothers and sisters of the deceased Charles.   These conveyances, except as to one section which is not included in the decree of the circuit court, were without consideration, and therefore void as to the

appellees who were creditors, unless the lands, or some ascertainable interest in them, belonged in equity to the other heirs of Charles Latham, deceased. So far as the lands were entered with the money of Charles Latham, there was, of course, a resulting trust in his favor while living, and in favor of his heirs after his decease, and to the extent of this equitable interest, their legal title, derived under the deed from William H. Latham, cannot be disturbed.

There are two thousand acres of the land now in controversy, and sought to be reached by this bill. The amount paid for entering these lands, at Government price, was twenty-five hundred dollars. It is urged by counsel for appellant that, in determining what portion of this money belonged to Charles C. Latham, we are to take into account two debts, amounting to about $700, due him, and then in the hands of his father for collection, and on which the latter had given further time to the debtors. But this position is not tenable. These debts were not collected until long after the entry, and a resulting trust arises only so far as William H. Latham used the funds of his son, then held by him, for the purchase of the lands.

It is also insisted for the appellants that Charles sent to his father, from California, between $600 and $700, in 1851; $600 May 1, 1853, and $600 June 3, 1853. But it is very evident from the two letters of those dates, from Charles to his father, that only one sum of $600 was sent, and that was by draft in the letter of May 1st. In the letter of June 3d, he says: "The money that you spoke about in your last letter before this, I have sent you; six hundred dollars by Adams express." He says in this same letter that he was not doing well, having been engaged for three weeks in unprofitable labor, but was going to work in a place where he expected to make four or five dollars per day. He states that it cost him $3.75 per hundred to send the $600, and that is what he states in his letter of May 1st his draft cost him. If he had really made two distinct remittances, within the preceding month,

of $600 each, he would, undoubtedly, in his letter of June 3d, in stating what money he had sent, have referred to both remittances, and not to one only. It is urged that he would not have sent a draft by Adams' Express, but probably at that period in the history of California, this was not uncommon.

From these letters, and from the other evidence in the record, we are of opinion that only twelve hundred dollars of the money of Charles C. Latham can be clearly traced to the entry of these lands, and we think that sum may be so traced. It appears with sufficient clearness that it was not received or used by the father as a loan, but for the express purpose of entering lands for his son.

It follows, then, that the heirs of Charles C. Latham had a resulting trust in these lands to the extent of twelve undivided twenty-fifths. The legal title of the remaining thirteen twenty-fifths must be considered as held by the heirs, subject to the lien of the creditors of William H. Latham, as also the one-seventh part of the twelve twenty-fifths which would belong to him as one of the seven heirs of his son. The decree of the circuit court will be so modified as to conform to this opinion.

As cross errors are not assigned, we have not considered that portion of the decree dismissing the bill as to the section conveyed to William A. Latham.

*Decree reversed.*