## Richmond.

McDEVITT v. FRANTZ.

February 8th, 1889.

1. RESULTING TRUST.—After the legal title has passed to the grantee, a resulting trust cannot rise from a subsequent application of a third person's funds to the improvement of the property, or to satisfy the unpaid purchase-money. It must arise at the time of the execution of the conveyance.

2. IDEM—*Case at bar.*—Husband and wife conveyed land in trust for himself for life, then to wife, remainder to their children living at her death, in fee. The land was sold at suit of his creditors, leaving a surplus. Wife, six months previous, had bought a tract as a home for the family, paid part and gave a trust deed for balance. Parents and children filed petition in the suit to have the surplus invested in discharging the trust deed, and the court so decreed. The tract had been conveyed to wife absolutely, and for more than twenty years husband and wife treated the land as their fee simple, selling parts and giving trust deeds on it, and, after his death, she conveyed the whole to one of her daughters;

HELD:

The children had only a lien on the land for the trust fund invested in it.

3. WITNESSES—*Married women—Competency.*—The married daughters with husbands, directly interested in the suit brought to establish a trust in said tract after the mother's decease, were not competent witnesses.

Appeal from decree of circuit court of Essex county, rendered June 4th, 1887, in a cause wherein Martin McDevitt and Florence, his wife, are complainants, and Louisa Frantz, in her own right and as executrix of the last will and testament of Anna M. Sewell, deceased, Wm. F. Stewart and Lelia, his wife, and Clyde Cassells, an infant, are defendants. The object of the suit was to establish, by an implied trust, a fee simple remainder in

a tract of land which had been conveyed absolutely to Anna M. Sewell, and on which she had paid part of the purchase-money and executed a trust deed on it for the residue, to the extent to which certain trust funds belonging to the female complainant and the other children of said Anna M. Sewell had been, under an order of the chancery court, applied to the discharge of said trust deed. The decree being adverse to the complainants, they obtained an appeal, complaining also of the ruling of the circuit court excluding the female complainant as a witness in the cause on the ground of incompetency. Opinion states the case.

*Arthur S. Segar*, and *Joseph Christian*, for appellants.

*Henley & Peachy*, and *Thomas Tabb*, for appellees.

FAUNTLEROY, J., delivered the opinion of the court.

The leading facts of the case, as presented by the record, are as follows, viz: James M. Sewell, of Cecil county, Maryland, about the year 1840, married Anna M. Pinckney, of the city of Baltimore. He was seized and possessed of a farm called "Holly Hall," located in the said county of Cecil, and she was possessed of certain separate estate not liable for her husband's debts. The said James M. Sewell, by the year 1855, had become heavily involved in debt; and, on the 14th day of March, 1855, the said James M. Sewell and wife (in which deed the mother of said James M. Sewell united) conveyed to Richard Grayson, trustee, the said tract of land, "Holly Hall," upon the following trusts: "to the use of the said James M. Sewell for and during the term of his natural life, and, after the death of the said James M. Sewell, to the use of the said Anna M. Sewell, wife of the said James M. Sewell, and, after the death of the said Anna M. Sewell, then to and for the use of such children of the said James M. Sewell and Anna M., his wife, as may then be living, to them and their heirs forever."

In a certain suit instituted in the circuit court of Cecil county, Maryland, by Thomas Thackery for himself and other creditors of the said James M. Sewell, assailing the said trust deed to Grayson, trustee, as fraudulent, the said circuit court, by its decree of the 17th day of October, 1856, adjudged, ordered, and decreed, "that the deed of trust executed by James M. Sewell and Anna M. Sewell, his wife, and Anna M. Sewell to Richard Grayson, on the 14th day of March, 1855, be and is hereby declared fraudulent and void as to the creditors of the said James M. Sewell, who were creditors at the time of the execution thereof." And the said court, by the same decree, ordered that the real estate mentioned in the said deed be sold for the payment of the debts of the said James M. Sewell, and appointed Hiram McCullough trustee or commissioner to make the sale. The sale was made in February, 1857 ; and after the payment of the said debts, the costs of suit and expenses of sale, there remained a surplus in the hands of the court of $6,390.05, subject to the aforesaid trust.

In 1857 the said James M. Sewell and wife, with their children, came to the county of Elizabeth City, Virginia, to reside. By deed dated August 11th, 1857, Zachariah Craver and Anna, his wife, in consideration of the sum of "$2,000 in hand paid, and the further consideration of $7,300 to be hereafter paid to Zachariah Craver by said James M. Sewell, and the payment of which is to be secured by deed of trust on the real estate hereinafter granted, conveyed to Anna M. Sewell (the wife of said James M. Sewell) that certain plantation in the county of Elizabeth City, Virginia, and the woodland used therewith, known as ' Melrose,' containing one hundred and twenty-one and one-fifth acres and one hundred and twenty-nine perches, to have and to hold the same to her, the said Anna M. Sewell, her heirs and assigns forever." This said deed was duly recorded in the clerk's office of the county court of Elizabeth City county, Virginia, September 5th, 1857. On the 29th day of January, 1858, the said James M. Sewell and Anna M. Sewell, his wife, Anna

P. Sewell, Florence Sewell, Louisa Sewell, and Lelia Sewell, children of the said James M. Sewell and wife, infants, by James M. Sewell their next friend, filed their petition in the said cause of Thomas Thackery against James M. Sewell and others, then pending in the circuit court of Cecil county, Maryland, representing "that after the payment of all the debts of James M. Sewell, exhibited and filed under the decree in this cause, as well as all the costs and expenses of this suit, there will, as appears by the report of the auditor of this court herein filed and confirmed, remain in the hands of the trustee the sum of $6,390.05, to be invested under the order of this court agreeably to the terms and provisions of the deed of trust in the proceedings mentioned. And your petitioners, James M. Sewell and Anna M. Sewell, further show that they have lately purchased, as a home for themselves and children, the property described in the deed herewith exhibited, marked exhibit 'J. M. S.' (the Craver deed), and they pray the court to order and direct the trustee in this cause to invest the surplus in his hands above-named in the property described in said deed, upon the terms prescribed in the said deed of trust, and in such manner as the court may deem right and proper." On the 30th day of January, 1858, the said circuit court of Cecil county made this order: "Upon the within petition it is ordered this 30th day of January, 1858, that Hiram McCullough, trustee appointed by the decree in this cause, invest upon bond and mortgage or deed of trust upon the property described in the deed accompanying the within petition, the surplus remaining in his hands agreeably to the report of the auditor in this cause, provided that the same be applied to the extinguishment of the liens on said property, so as to make it the first lien thereof, to such uses and upon such trusts as are prescribed and directed in the deed of trust in these proceedings mentioned, and that he report the fact and manner of such investment, when made, to this court."

The said James M. Sewell and Anna M. Sewell, during their joint lives, and the said Anna M. Sewell after the death of her

husband, sold, at different times, to various parties, in small lots, some fifty acres of this "Melrose" or "Bay View" tract of land; and the said Anna M. Sewell, by deed dated the 19th day of October, 1882, for a valuable consideration, sold and conveyed a part of the remaining tract of land to her daughter, Mrs. Louisa Frantz; and by her certain other deed, dated October 22d, 1883, by deed of gift, conveyed to the said Louisa Frantz the last remnant of the said Melrose (or "Bay View") tract of land. The said Anna M. Sewell had, previous to the execution of the last said deed of October 22d, 1883, made her last will and testament, which bears date the 30th day of December, 1882, by which she devised this last remaining portion of this Melrose property, with the exception of a small part thereof, to the said Louisa Frantz for her life—remainder to her children. The appellants, Martin McDevitt and Florence, his wife, William F. Stewart and Lelia, his wife, bring this suit in the circuit court of the county of Elizabeth City, alleging in their bill that the said tract of land, known as "Melrose," was purchased by the said James M. Sewell, in trust for the use and benefit of himself and the said Anna M., his wife, during their joint lives, and the life of the survivor of them; with the remainder in fee to such of the children of the said James M. Sewell and Anna M., his wife, as might be living at the death of the said survivor; and that the said Anna M. Sewell held the legal title thereto upon the said trusts and for the said purposes. James M. Sewell died in 1881, and the said Anna M. Sewell died in July, 1884, leaving surviving her the following children, viz: Florence McDevitt, Louisa Frantz, and Lelia Stewart, and her grandchild, Clyde Cassells, the infant son of her deceased daughter, Anna Sewell. The bill alleges that the said sum of $6,390.05, the surplus in the hands of the trustee, Hiram McCullough, was, by the said trustee, invested in pursuance of the aforesaid decree of the circuit court of Cecil county, Maryland, in the aforesaid tract of land known as "Melrose," and that the same hath always so

remained invested, according to the purposes, trusts, and uses of the aforesaid deed of trust from the said James M. Sewell and Anna M., his wife, and the said Anna M. Sewell, the mother, etc., to the said Richard Grayson, trustee, dated March 14th, 1855, and that no part thereof has ever been paid.

The bill charges that, for several years prior to the death of the said Ann M. Sewell, and at the time of the execution of the said deeds of October 19th, 1882, and of October 22d, 1883, by her to the said Louisa Frantz, and at the time of the execution of the said last will and testament, and thence during the period intervening until the day of her death, the said Mrs. Ann M. Sewell was of unsound mind, and mentally incompetent to execute any paper making final disposition of any of her property, and that the said deeds and the said last will and testament were obtained by misrepresentation and the exercise of undue influence and constant importunity, which could not be resisted by her, on the part of the said Louisa Frantz, upon the said Ann M. Sewell exercised, made and practiced. And the prayer of the bill is that the aforesaid deeds from the said Ann M. Sewell to the said Louisa Frantz, dated respectively the 19th day of October, 1882, and the 22d day of October, 1883, and the said last will and testament of the said Ann M. Sewell, deceased, may be declared null and void and forever set aside; that partition of the said tract of land known as Melrose (or "Bay View") may, if practicable, be made between the parties entitled thereto, or, if partition is not practicable, then that the said tract may be sold, and distribution made of the proceeds thereof; and that the necessary accounts be ordered and taken, etc.

The bill was answered by Louisa Frantz in her own right, and by her as executrix of the will of Ann M. Sewell, deceased, and by John M. Willis as co-executor of the said will, denying and putting in issue the material allegations of the bill, and especially denying that the tract of land known as "Melrose" was purchased by the said James M. Sewell in trust and for the use and benefit of himself and the said Anna M. Sewell, his wife,

during their joint lives and the life of the survivor of them, with remainder in fee to such of the children of the said James M. Sewell and Anna M., his wife, as might be living at the death of the said survivor; and wholly denying the allegation that the said Anna M. Sewell held the legal title to the said Melrose· tract of land upon the said trusts, and for the said purposes. And exhibiting, as part of her answer, the absolute, fee simple deed, conveying the said land, from Zachariah Craver and wife, dated 11th day of August, 1857, to the said Anna M. Sewell; under which she held and used and exercised unconditional title to, and control and disposition of the said land from the day of its purchase in 1857, down to the day of her death in 1884. The answers deny the allegation that Mrs. Anna M. Sewell was ever of unsound mind, and that the deeds and will aforesaid were procured from her by any undue influence or importunity, or that they are fraudulent and void for any reason whatever; and she, the said Louisa Frantz, respondent, claims the said Melrose tract of land (or "Bay View") under and by virtue of the said deeds of October 19th, 1882, and of October 22d, 1883. She denies the allegation of the bill that the deed of October 19th, 1882, is without consideration, and that the consideration of $1,200 recited in the said deed is untrue; and says that the said Anna M. Sewell did receive from her the said sum of money, as stated in the said deed. That she was then, and is now, a widow with two young children, without property or means of support, other than the lots purchased from her mother as aforesaid, from which she gets no income; and that her said mother, realizing her helpless condition, and the fact that her two other daughters, Mrs. McDevitt and Mrs. Stewart, were amply provided for, with husbands of considerable means, of her own free will and unbiased judgment, suggested, executed and delivered to her the said deed of gift dated October 22d, 1883. The answers deny the allegation of the bill that the sum of $6,390.05 was ever invested in the purchase of the Melrose tract by Hiram McCul-

lough, or any other person; but expressly admits that the said sum was invested by him as a loan upon the said property, as directed by the order of the said circuit court of Cecil county, Maryland, of January 30th, 1858, endorsed upon the petition of James M. Sewell and Anna M. Sewell and their children, filed by them January 29th, 1858, in the said suit of *Thackery, &c.* v. *Sewell and others.* The answer admits the allegation of the bill, that the records of Elizabeth City county, Virginia, are lost or destroyed, containing the registry of deeds for the period intervening between the years 1835 and 1865.

Upon the hearing of the cause upon bill and answers and depositions, the court decreed that, "it appearing to the court, from the admissions of the counsel for the plaintiffs, that they have abandoned their prayers asking this court to set aside and declare null and void the deeds from Anna M. Sewell to Louisa Frantz, dated respectively the 19th day of October, 1882, and the 22d of October, 1883, and to declare null and void the last will and testament of the late Anna M. Sewell, upon the grounds of fraud, undue influence and incompetency, the court doth adjudge, order and decree that the plaintiff's bill be and the same is hereby dismissed as to the said deeds of the said Anna M. Sewell to the said Louisa Frantz, bearing date the 19th day of October, 1882, and the 22d day of October, 1883, respectively, and as to the last will and testament of the late Anna M. Sewell. And the court being further of the opinion that the said Martin McDevitt and Florence, his wife, and William F. Stewart and Lelia, his wife, have no interest whatsoever in the tract of land in the bill and proceedings mentioned and described as " Bay View," or " Melrose"; but a lien thereon to secure to the said Florence McDevitt and Lelia Stewart each one-third of $6,390.05, invested as a loan upon the said land under the decree of the circuit court of the county of Cecil, State of Maryland, pronounced on the 30th day of January, 1858, in the cause of Thomas Thackery against James M. Sewell and Anna M. Sewell and others, doth adjudge, order and decree that the said Louisa Frantz, within

ninety days from the date of this decree, deposit to the credit of
this cause, in the Marine Bank, Norfolk, the sum of $4,260.04,
with interest from the 15th day of August, 1884, the date of
the death of the late Anna M. Sewell, to the date of the deposit;
and upon the filing of the certificate of said deposit with the
papers in this cause, Thomas Tabb, as special commissioner,
will, by a proper deed of release, release to the said Louisa
Frantz the said tract or parcel of land in the bill and proceed-
ings described as "Bay View," or "Melrose," from the lien
thereon to secure the said sum of $6,390.05, loaned thereon, as
hereinbefore stated, etc., etc.  From this decree this appeal is
taken.

As the complainants abandoned in the lower court their claim
to relief, based upon the grounds charged in their bill of men-
tal incapacity and undue influence, admitting that there was no
evidence tending to prove the charge; and as they have, by an
agreement signed by counsel and filed with the record in this
court, renounced and abandoned the said charges, admitting
their inability to prove the same, the case of the appellants rests
upon the claim that the said tract of land known as "Melrose"
was purchased by the said James M. Sewell in trust, for the
use and benefit of himself and the said Anna M., his wife,
during their joint lives, and the life of the survivor of them,
with remainder in fee to such of the children of the said James
M. Sewell and Anna M., his wife, as might be living at the
death of such survivor.  There is no evidence in this record of
any such trust.  The deed from Craver and wife to Anna M.
Sewell neither expresses on its face nor admits of any implica-
tion of trust to any one, or for any one; it is clear, simple, abso-
lute, and free from all ambiguity whatever.  It conveys the
property to said Anna M. Sewell " to have and to hold the same
to her, the said Anna M. Sewell, her heirs and assigns forever."
It expresses the consideration to be $9,300, and it acknowledges
the cash payment of $2,000, and the residue, $7,300, to be paid
in instalments, and to be a lien secured upon the land by a deed

of trust. It is admitted that the cash payment of $2,000 was made by Mrs. Anna M. Sewell, out of her separate estate; that James M. Sewell was, at the date of purchase, wholly insolvent, with unsatisfied judgments to a considerable amount against him recorded in Cecil county, Maryland; and the record shows that he remained insolvent to the day of his death, in 1881. It is admitted that the sum of $6,390.05, obtained under the order of the circuit court of Cecil county, Maryland, was applied, as directed by the decree of that court, towards the satisfaction of the unpaid purchase-money due thereon to Craver; and, to that extent, to satisfy the purchase-money lien secured thereon, and to "make it the first lien thereon." There was yet the difference between the $6,390.05 and the $7,300, with the accumulated interest due thereon. This balance, the record shows, was paid by Mrs. Anna M. Sewell out of her separate estate. She became, by the deed from Craver and wife, the absolute owner in fee of the property purchased, subject only to the liens placed thereon for the original purchase-money. Thus, the wise foresight and generous provision of Mrs. Anna M. Sewell, out of her own separate property, aided by the loan of the fund under the control of the circuit court of Cecil county, Maryland, in which she had a life estate, provided a home for her husband and children, in which he lives, secure from his creditors, to the day of his death; and these daughters grew from childhood to womanhood, and until they exchanged it for the homes of their respective husbands.

But it is claimed by the appellants that the Melrose tract of land was held by the said Anna M. Sewell upon the same trusts as those prescribed in the Grayson deed of March 14th, 1855, because, as they allege, "their money, clothed with a sacred trust, went into this land." They have a decree for their money, with interest from the time (when, only, they did, or could, have any possible right to the use of the fund of $6,390.05, loaned by the court and secured as first lien upon the land) to-

wit: the death of the life-tenant of the fund, Mrs. Anna M. Sewell. It is very certain, that the only money which was paid for the purchase of the Melrose tract, and when the deed was made vesting the legal and fee-simple title, absolutely in Ann M. Sewell, was paid by her. These appellants did not contribute anything, and they had nothing to contribute; and it was not until nearly six months after the purchase and the execution and delivery and recordation of the deed conveying the absolute fee-simple title to the land to Mrs. Anna M. Sewell, and the execution and recordation of the deed of trust upon the land to secure the deferred payments of the purchase-money to the vendor, Craver, that application was made, by petition, to the circuit court of Cecil county, Maryland, for the loan or use of the fund under its control, in which Anna M. Sewell had a life interest; upon which petition, informing the court, "And your petitioners, James M. Sewell and Anna M. Sewell, further show that they have lately purchased, as a home for themselves and children, property described in the deed herewith exhibited" (the Craver deed)—the said court ordered that the trustee who held the fund should invest it "upon bond and mortgage, or deed of trust upon the property, provided that the same be applied to the extinguishment of the liens on said property so as to make it the first lien thereon; to such uses and upon such trusts as are prescribed and directed in the deed of trust from Sewell and wife to Grayson, trustee." At the time of the purchase and execution and delivery of the deed from Craver and wife to Anna M. Sewell, not one dollar of this fund was in any manner vested in the purchase; and, if the circuit court of Cecil county, Maryland, six months afterwards, had refused to approve and order the loan of the fund under its control to be applied to the satisfaction of the purchase-money liens secured upon the land to Craver, the vendor, by a deed of trust from his vendee, Mrs. Anna M. Sewell, the Melrose tract would be as free and exempt, now, from the lien of this loan, and all implica-

tions upon the title of its owner, as it was before Craver sold and conveyed the title to Mrs. Anna M. Sewell by the deed of August 11th, 1857.

The trust must result, if at all, when the legal title vests in the grantee. Perry on Trusts, sec. 133; Leading Cases in Equity, 1 vol. 337-8-9; *Steere* v. *Steere*, 9 A. D. 256. "A resulting trust must arise at the time of the execution of the conveyance." *Miller* v. *Blose*, 30 Gratt. 751; *Phelps* v. *Seely*, 22 Gratt. 573; *Donaghe* v. *Tams*, 81 Va. (6 Hansbrough) 142.

The trust results from the original transaction, at the time it takes place, and at no other time; and it is founded on the actual payment of money, and on no other ground. It cannot be mingled or confounded with any subsequent dealings whatever—they are governed by different principles—and the doctrine of a resulting trust would be mischievous and dangerous if we once departed from the simplicity of this rule. *Botsford* v. *Burr*, 2 Johns. Ch'y, 408; *Latham* v. *Henderson*, 47 Ill. 185.

After the legal title has once passed to the grantee by deed, it is impossible to raise a resulting trust so as to divest that legal estate by the subsequent application of the funds of a third person to the improvement of the property, or to satisfy the unpaid purchase-money; the resulting trust must arise, if at all, at the time of the execution of the conveyance. *Rodgers* v. *Murray*, 3 Paige, 390-98. From these authorities it is clear that no resulting trust could arise by any possibility from the investment of the $6,390.05, as directed by the circuit court of Cecil county, Maryland, because, if for no other reason, it was nearly six months after the transaction of purchase and after the conveyance of the legal title to the grantee, Mrs. Anna M. Sewell.

In their petition, filed in the circuit court of Cecil county, Maryland, nearly six months after the purchase was made and completed and the legal title vested in Mrs. Anna M. Sewell by an absolute, unconditional, fee simple deed, James M. Sewell and Anna M. Sewell say to the court that they *had purchased*

the property in Virginia, and assign as a reason why this surplus should be ordered by the court to be invested in it in such manner as the court may deem right and proper; and the court, by its order responsive to the petition, directed to trustee who held the fund to invest it "upon bond and mortgage, or deed of trust, *upon the property*, provided that the same be applied to the extinguishment of the liens on the said property, so as to make it the first lien thereon." Is not this decree as plain and simple as language can convey the intention of the court, that the fund under its control should be invested by loan secured as first lien upon the Melrose property; and does it not exclude the presumption that the court intended to purchase real estate? Mrs. Anna M. Sewell held an absolute title to this property by a conveyance which had been recorded for nearly six months, for which she had made a large cash payment, and on which she had fixed the incumbrance of a deed of trust for the deferred payments of the purchase-money; when, in a paper, not designed in any way to dispose of the property, but simply referring to the motive which had prompted her to make the purchase of the Melrose tract, she petitioned the circuit court of Cecil county, Maryland, to allow and direct the trustee in this cause to invest the surplus in his hands above named in the property described in the said deed—her deed—which she exhibited as part of her petition showing that she was the absolute and unconditional holder of the title and owner of the property. Perry on Trusts, sec. 119: "But no trust is implied where the words simply state the motive leading to the gift, as when the gift is to a person 'to enable him to maintain the children,' or an absolute gift is made and the motive stated 'that he may support himself and children,' or a gift is made absolutely for her own use and benefit, having full confidence in her sufficient and judicious provision for the children. When a testator gives to his wife the use, benefits and profits of his real estate for life, and all his personal estate absolutely, having full confidence that she will leave the surplus to be divided justly among my

children,' it was held that the widow took the personal estate absolutely, subject to no trust. And it may be added that the mere expression of a purpose for which a gift is made does not render the purpose obligatory." See *Rhett and Wife* v. *Mason's Ex'ors, &c.,* 18 Gratt. 541.

Lord Nottingham, in *Cook* v. *Fountain,* 3 Swanst R., 585, says, with reference to implied and presumptive trusts: " There is one good, general and infallible rule that goes to both these kinds of trusts. It is such a general rule as never deceives, a general rule to which there is no exception, and that is this, the law never implies, the court never presumes a trust but in case of absolute necessity. The reason of this rule is sacred, for if the chancery do once take liberty to construe a trust by implication of law, or to presume a trust unnecessarily, a way is opened to the Lord Chancellor to construe or presume any man in England out of his estate."

Chancellor Kent, in *Steere* v. *Steere,* 5 Johns. Ch. 1, says: " Parents will usually make declarations and express intentions of holding their property for their children; but a technical trust would not be easily deduced from them unless they were contained in a last will and testament made on purpose to dispose of the estate."

The circuit court did not err in its ruling that Mrs. Florence McDevitt and Mrs. Lelia Stewart are not competent witnesses in this cause. They are married women, and they and their husbands are directly interested in the result of the suit. *Statham* v. *Ferguson,* 25 Gratt. 28; *Mason* v. *Wood,* 27 Gratt. 783. But their depositions and that of W. H. Myers, prove nothing but some general vague and indefinite declarations or statements made by Mrs. Anna M. Sewell, long after the purchase, and in the family intercourse with her children during the twenty-five years that she was the acknowledged, undisputed and absolute owner of the Melrose tract. " The proof must be very clear, and mere parol evidence ought to be received with great caution." *Bank of U. S.* v. *Carrington,* 7 Leigh, 581; *Miller* v. *Blose,* .

30 Gratt. 751; *Donaghe* v. *Tams*, 81 Va. (6 Hansbrough) 142; *Noel* v. *Noel*, 1 Iowa, 426; *Baker* v. *Vining*, 30 Me. 121; *Johnson* v. *Quarles*, 46 Mo. 426; *Thomas* v. *Standiford*, 49 Md. 181; *Lee* v. *Browder*, 51 Ala. 288; *Parker* v. *Snyder*, 31 N. J. Eq. 164.

Mrs. McDevitt says: "I have heard my mother say very often that Bay View (Melrose) was bought from the proceeds of the sale of Holly Hall." She was only referring in a general way to what had been done by the order of the circuit court of Cecil county, Maryland, in lending the surplus of $6,390.05 upon Melrose, and which had been applied to the extinguishment, to that extent, of the lien for the unpaid purchase-money. She says: "I have often censured my mother for selling lots, and would remark to her, if she was not careful, there would be no property left for us children. She would reply that she would watch out for that; that we would get what belonged to us." Her mother knew that so long as sufficient remained to satisfy the lien upon the property for $6,390.05, the children would get what belonged to them; and what she meant by that expression is explained by a letter of Mrs. Anna M. Sewell written to her sister, which Mrs. McDevitt puts in evidence as part of her deposition. In it Mrs. Sewell says, "Mr. Sewell's children are entitled to $6,000 in this place what he paid; the rest is mine, to do with as I please. I paid many a thousand dollars on this place. At my death, the $6,000 will be paid to them by my lawyer."

Sir William Grant, in *Lench* v. *Lench*, 10 Vesey, 513, says of a witness, "she swears to no fact or circumstance capable of being contradicted or investigated, but merely to a naked declaration that the purchase was made with trust-money. That is, in all cases, most unsatisfactory evidence, on account of the facility with which it may be fabricated, and the impossibility of contradicting it. Besides, the slightest mistake, or failure of recollection, may totally alter the effect of the declaration." *Donaghe* v. *Tarns*, 81 Va. (Hansbrough) 151; *Bottsford* v. *Burr*, 2 Johns. Ch. 412; *Phelps* v. *Seely*, 22 Gratt. 573.

James M. Sewell and Mrs. Anna M. Sewell exercised undisputed, unquestioned and absolute ownership from 1858 to 1884, during which long period they sold to various parties, at different times, nearly one-half of this Melrose tract. They executed deeds of trust upon it to secure loans, and a deed of trust to indemnify and protect the sureties of this very Martin McDevitt, their son-in-law, as treasurer of the county of Elizabeth City. Mrs. Sewell conveyed portions of the land by deeds and devised it by will. These facts express her *intention* as to her title as the absolute owner of the fee. The creditors of James M. Sewell recognized the fact of her ownership, and never assailed her title or her deeds. She, through all the childhood and young womanhood of her daughters, cared for and provided for them in her home, as she did for their father; and, recognizing the fact that Mrs. McDevitt and Mrs. Stewart were both married and provided for, she deems it unwise to *divide* the little remnant of "Melrose" which would be left after the payment of the lien upon it in favor of Mrs. McDevitt, and Mrs. Stewart, chose to give it— the whole barely adequate to her support—to that child, Mrs. Louisa Frantz, who was a widow with helpless and dependent children.

There is no error in the decrees complained of, and they are affirmed.

DECREES AFFIRMED.