MICHAEL MYERS AND CORNELIUS GRIFFIN

v.

ANNA MAHER.

*Real Property—Cloud—Judgment—Bill to Remove—Unrecorded Deed
—Resulting Trust—Homestead—Dower—Subrogation.*

Upon a bill filed to remove the lien of a judgment obtained against the husband of petitioner as being a cloud upon her title to certain real estate, this court holds that the petitioner was not in possession of the premises in question at the time said judgment was obtained under an unrecorded deed, the same having been filed for record after such lien attached, but that she would be entitled, upon sale thereof under execution, or upon her own petition, to receive certain sums paid by her to liquidate mortgages thereon, and that her claim therefor should properly take precedence of liens accruing subsequently to such payments.

[Opinion filed June 14, 1889.]

APPEAL from the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding.

Messrs. YOUNG & MAKEEL, for appellants.

In this State a judgment creditor is protected under the conveyancing act as a purchaser, and the lien of his judgment attaches to whatever interest the record discloses to be in the judgment debtor at the entry of the judgment, as against every other claim of which the creditor has no notice. Martin v. Dryden, 1 Gilm. 205, 206, 217, 218, 219; Massey v. Wescott, 40 Ill. 163; McFadden v. Worthington, 45 Ill. 366.

Property standing of record in the name of the husband can not be regarded as held in adverse possession by the wife, when it is jointly occupied or used by both husband and wife. Stanton v. Kirsch, 6 Wis. 341; Slocum v. Slocum, 9 Ill. App. 143, 144.

Therefore no claim can be made in this case that the complainant held possession adverse to that of her husband, of that part of the building occupied by both of them, namely, of the flat in which they resided.

Evidence to sustain a resulting trust must be very clear, and is always received with great caution. Mahoney v. Mahoney, 65 Ill. 407.

With so much for preface we come to the two main questions in the case. Was there a resulting trust of the whole property? And was there such adverse possession by the wife as put the judgment creditors upon notice of her resulting trust? The correct position, we claim, will be found in the negative of both propositions.

There was no resulting trust of the whole property. The decree in this respect is against the facts, even as they appear upon complainant's own showing.

Mr. Maher paid $1,200 for the lot in 1883. Of that amount, there was furnished on behalf of complainant, the principal sum of $500, with whatever interest may have accrued upon it at the time it was turned over. The evidence, however, leaves that interest an unknown quantity. Neither dates nor stipulated rate is furnished, nor does it appear that any fixed amount was at any time settled, or agreed upon, as the amount to be allowed for interest. But passing that weak point in complainant's case, and allowing the highest amount anywhere claimed as interest, namely $200, and adding that to the principal of $500, we have $700, the largest amount to which complainant had any claim in the hands of Mr. Maher at the time when he bought the lot. It is said that he paid for the lot out of the loan from Greenebaum upon the Seymour street lot, but that was his own lot. The extent of the claim of Mrs. Collins upon it was an indebtedness of (at the outside) $700. This indebtedness was transferred to complainant, and is the original basis, and the only original basis, of her claim to be entitled to a resulting trust. She had no further interest in, or right to, the Greenebaum loan. Besides, the Greenebaum loan was but $1,000, whereas Mr. Maher paid $1,200 for the lot in question. Some of his own money was therefore used to purchase it. Of the $1,200 which was used to buy the lot, $500 of it was at the very least the money of, and was furnished out of his own funds by Mr. Maher. The complainant could not, therefore, in any aspect of the case,

have a resulting trust in the lot, at the time of its purchase, to exceed a part; and that part could not have exceeded seven-twelfths of the whole. Nor could this aliquot interest be afterward varied by her contributing more than her quota (had she so contributed, but when examined it will appear that she contributed less,) toward improving and preserving the property. Perry v. McHenry, 13 Ill. 227; Latham v. Henderson, 47 Ill. 185.

There was no such adverse possession by her as put the judgment creditor upon notice of her claims.

About the facts bearing on this point there can be no controversy. They are made out by the testimony of the complainant, and some of the tenants, called by her as witnesses. She let the two flats not occupied by herself, her husband and their children, to tenants who paid the rent to her and who applied to her for repairs when needed; and she used the rents to support the children. Whether any written leases were made does not appear, nor does it appear whether she gave any written receipts for rents paid.

In this connection it is necessary to bear in mind that Mr. Maher, in person, transacted the business of buying the lot and erecting the building; that the title stood of record in his own name; that he resided in part of the building, occupying it jointly with his wife, the complainant; and that she applied the rents received to his business, that is, in supporting his children, which certainly was his business. Suppose an inquiring purchaser or incumbrancer had ascertained all these facts, would he be expected to infer therefrom that she held adverse to her husband? Would any ordinarily careful person, knowing these facts and taking into account the family relations between the parties, hesitate to extend credit to the husband on the strength of his being the owner of the property? A wife's possession as against the husband's creditors is difficult to establish. Harrison on Contracts of Married Women, Sec. 575.

" The family relation is such, and the probabilities of ownership so great on the part of the husband, that a plain and satisfactory case should be made out before the wife can be

permitted to hold property against honest creditors." Earl v. Champion, 65 Pa. St. 195.

Where husband and wife are living together, "possession does not furnish the same test as to title between them, as it would when applied to strangers." Stanton v. Kirsch, 6 Wis. 341.

To constitute adverse possession there must be such appro· priation as will apprise the community in the vicinity that the land is in the exclusive use of the person claiming the possession. Morrison v. Kelly, 22 Ill. 610, 623.

Notice by possession to be sufficient must be so open and visible as to arrest attention, and as to apprise the world of the occupancy, and of who the occupant is, or how he can readily be ascertained. It must be exclusive. A user in common with others is not hostile in character. Truesdale v. Ford, 37 Ill. 214; Stone v. Cook, 79 Ill. 425, 426, 429.

This doctrine is equally applicable whether she rely on the resulting trust or upon the unrecorded deed. The nature of the possession was insufficient, under the authorities, to support either title. As to that deed, it seems out of the question that it can cut any figure, at any rate. It was not recorded until after the entry of the judgment. It never took effect for want of delivery. Herbert v. Herbert, Breese, 354; U. M. L. Ins. Co. v. Campbell, 95 Ill. 281; Benneson v. Aiken, 102 Ill. 287. Unless it can be regarded as a deed of gift or family settlement. But, in that case, it would be in fraud of the rights of creditors; and an effectively adverse possession would not support it.

Messrs. GOLDZIER & RODGERS, for appellee.

MORAN, J. The bill in this case was filed to remove the lien of a judgment obtained by appellants against the husband of appellee, from a certain lot and the improvements thereon, as being a cloud on appellee's title to the same.

The fact on which the relief asked is sought, are as follows: In October, 1882, William H. Maher, the husband of appellee, was the owner of a certain lot in Cossit's addition to Chi-

cago, and was owing to Margaret Collins, the mother of appel-
lee $500, three hundred of which was secured by mortgage
on said Cossit street lot, and two hundred of which was with-
out security. Maher wished to receive more money on said
lot, and applied to Margaret Collins to release her mortgage
upon it, which she did upon condition Maher should agree
that he would put the money which he owed to her into a
home for appellee. This he agreed to do, and the mortgage ·
was thereupon released. In the summer of 1883, said Maher
purchased the lot here involved, situated on Macalester Place,
in Chicago, for the sum of $1,200, and in May, 1884, he
erected a building thereon which cost about $5,000, and which
was divided into flats. Maher, before he bought said lot, told
appellee to look at it, and asked her how she would like it
there, but nothing was said about giving her the lot, and
Maher took the title in his own name. He mortgaged the
lot for $300, which money went into the improvement which
he placed thereon. When the building was completed, in
September, 1884, appellee, with her husband and children,
moved into it, and occupied the middle flat, and she rented the
upper and lower flats to tenants and always collected the rents
herself, her husband having nothing to do with the renting,
and she always thereafter paid the taxes on the property and
the interest on the mortgage out of the rents.

Appellants obtained a judgment against said William H.
Maher on December 28, 1885, for the sum of $610.72, on
which execution was issued within a year. On January 12,
1886, a deed from William H. Maher to appellee, conveying
the lot in question " in consideration of love and affection, and
the sum of $600," was placed on record. The deed was dated
and acknowledged October 7, 1885, but was never in the posses-
sion of appellee, and she knew nothing of it till she found it
in her husband's papers after his death. He died December
27, 1886. The Circuit Court granted the prayer of the bill
and removed the judgment as a lien on appellee's title.

To sustain this decree it is contended that appellee was in
possession of the premises under an unrecorded deed, at the
time appellant's judgment was obtained. This contention can

not be sustained. If it be assumed that such a possession as appellee had by living upon the premises with her husband, would be notice to creditors and purchasers of an unrecorded title derived from him (a question on which we express no opinion), it must be admitted that there could be no notice of title before the inception of the title itself. The deed could not take effect until it was delivered, and it is very clear that it was delivered at the earliest, when it was filed for record, some fourteen days after the lien of appellant's judgment attached.

It is contended, further, that there was a resulting trust in the property as it was purchased with money which was in fact appellee's, the gift of her mother, and that her residence on the property and collecting the rents thereof was notice of her equitable title. If we were compelled to decide the case on this point we should have some difficulty in holding that a resulting trust arose in favor of appellee by the transaction as shown in this record, but it is unnecessary to labor with the question, for the reason that if she had a resulting trust and such possession as she had is to be treated as notice of it, it would exist to the extent only to which she furnished the purchase money. The lot cost $1,200, and the most she can be found to have furnished is $700. On this assumption her equitable interest would extend to only seven-twelfths of the property. Five-twelfths would still be subject to the lien of the judgment, and hence the decree can not be sustained on this theory. 13 Ill. 233; Latham v. Henderson, 47 Ill. 185.

It is suggested that appellee's husband had assumed an obligation in consideration of the release of the Margaret Collins mortgage to buy a home and put it in the name of appellee; that he did buy this lot and put her in possession of it as a homestead, and that this was evidence of his intention to perform the obligation; and that having put her in the actual possession, and having only the legal title in himself, he was capable of receiving a delivery of the deed as her agent from himself. We can not assent to this theory. It is fraught with too much danger to creditors to find favor in the courts.

If appellee was seeking to assert a title against pure volunteers perhaps the doctrine would sustain her.

There is a prayer in the bill that if the judgment shall be found to be a lien, appellee may be subrogated to the prior liens on the property which she has discharged, and that her homestead be protected and her dower assigned, etc. There is no basis in the bill for granting such relief. Appellants have not attempted to sell under their execution, and when they shall, they will be compelled to proceed in accordance with the law with reference to the homesteads.

As it appears from the evidence that appellee has paid off mortgages upon the property with money given her by her mother, whenever the question arises she should be subrogated to the liens that she has discharged. It would seem just that she should look to the property to be reimbursed for such payments, and that her claims in that respect would take precedence of liens which accrued subsequently to those which she discharged with money arising from other sources than the rents and profits of the property in question.

The decree of the Circuit Court will be reversed with directions to the Circuit Court to dismiss appellee's bill without prejudice, unless appellee shall elect to apply to the Circuit Court for a sale of the property and a distribution of the proceeds on the basis of giving precedence to the liens to which she may be found entitled to be subrogated, and to the right of homestead under the statute.

*Reversed and remanded with directions.*